UNITED STATES, Appellant,

v.

Lieutenant Colonel James E. HEUPEL, Appellee. Airman Basic Juan J. Contreras, Real Party in Interest.

No. 85A–02.

U.S. Air Force Court of Military Review.

17 Oct. 1985.

Colonel Kenneth R. Rengert and Captain Joseph S. Kistler, for appellant.

Colonel Leo L. Sergi and Captain James O. Sutton, III, for appellee.

Before SESSOMS, CANELLOS and CARPARELLI Appellate Military Judges.

DECISION

SESSOMS, Senior Judge:

At trial the Military Judge granted a defense motion to suppress evidence regarding the results of a urinalysis test pertaining to the accused. The government appeals that decision under Article 62, U.C.M.J., 10 U.S.C. § 862, RCM 908, and Rule 21, AFR 111–4 (12 July 1985). We find that the military judge ruled correctly.

The following recitation of the facts is derived directly from the trial judge's findings of fact. As part of the punishment imposed under Article 15, U.C.M.J., 10 U.S.C. § 815, for a 2-day AWOL, the accused was ordered into correctional custody at Griffiss Air Force Base (AFB), New York, for 30 days. Upon reporting to the correctional custody facility on 31 August 1984 he was instructed in writing by the Non-Commissioned Officer in Charge (NCOIC) of the facility to report that day to the hospital to produce a sample of his urine to be used for drug testing. The accused complied. The hospital tagged the specimen as "command directed," and dispatched it for analysis. The sample was subsequently tested at Brooks AFB and found to be positive for cocaine and marijuana metabolites. The formal test results were received at Griffiss AFB on 5 January 1985. The accused was subsequently charged with having used cocaine and marijuana between 1 August 1984 and 31 August 1984. For these offenses he was ordered to stand trial by general court-martial on 8 August 1985, more than 11 months after the urine sample was collected.

The order for the accused to give a urine sample as part of his in-processing at the Correctional Custody Facility (CCF) was an order given all persons undergoing correctional custody (CC) at Griffiss AFB after 21 May 1984. One hundred percent of

these persons, termed "correctionees," were tested. No distinction was made either upon rank or the nature of the offense that had been committed by the correctionee. This was apparently the only time a urine test was required of correctionees while they were in the program. The impetus for this procedure originated with the NCOIC of Correctional Custody. It was orally approved by the base commander contingent upon the approval of the local staff judge advocate and the availability of urinalysis allocations from the wing vice commander. The purported reason was to detect drug abuse and to identify abusers to their squadron commanders. It was to provide commanders with another variable in the decision-making process regarding a correctionee's fitness to remain in the Air Force, the need for a drug rehabilitation program, and to enlighten the commander regarding drug use in his squadron. This procedure was never formalized in any written regulation, manual, or handbook.

At the time the accused entered CC the minimum time required to receive the results of testing varied from 3 to 5 months. Though this was a matter within the knowledge of hospital personnel and the CCF NCOIC, they were unsure how this collection procedure should be categorized. For the specimen provided by this accused the hospital logbook was annotated to indicate that the testing was "commander-directed." The annotation listed his unit of assignment without reference to his status as a correctionee. Results of these CC evaluations were returned to the correctionee's squadron commander; never to the CCF NCOIC.

■ When ruling on an appeal under Article 62, U.C.M.J., this Court may act only with respect to matters of law, notwithstanding Article 66(c) U.C.M.J., 10 U.S.C. § 866(c), *United States v. Mayer*, 21 M.J. 504 (A.F.C.M.R. 5 Sep. 1985); *United States v. Lewis*, 19 M.J. 869 (A.F.C.M.R. 1985). We are, therefore, bound by the trial court's conclusions regarding the fore-going facts and must determine whether the military judge properly applied the law.

After painstakingly detailing his operative factual determinations the trial judge reached the following conclusions of law [among others]:

1. That the examination was one which was contemplated by AFR 30–2 para 4–2(d) as amended by IMC 82–3, and, thus, by the terms of the amendment, the results thereof were not admissible in this case.

2. The correctionees ordered to provide urine specimens were "specifically selected" for examination within the meaning of Mil.R.Evid. 313(b)(2).

3. Since the accused had just been punished under Article 15, U.C.M.J., for a recent offense, this urinalysis examination was one contemplated by Mil.R.Evid. 313(b)(1).

4. That under these circumstances, the prosecution was required to prove by "clear and convincing" evidence that this examination was an "inspection" within the meaning of Mil.R.Evid. 313(b) and that the prosecution had failed that test.

5. That the urinalysis results were not admissible under any other provision of Mil.R.Evid. 312 through 317.

Preliminary questions regarding the admissibility of evidence are properly determined by the military judge. Mil.R.Evid. 104(a). The military judge in this case clearly had the responsibility to determine whether the procedure employed for taking urine samples from correctionees at Griffiss AFB was an "inspection" as that term is defined in Mil.R.Evid. 313(b) and therefore admissible under the rule.

The military judge not only found that the evidence was not admissible under Mil. R.Evid. 313(b), he also found it inadmissible under Mil.R.Evid. 312 through 317. Because there was no other credible evidence to support the government's allegations of knowingly and unlawfully using marijuana and cocaine, prosecution elected to immediately file this appeal under Article 62, U.C. M.J.

Although we disagree with the trial judge's conclusion of law that the offense for which the accused had been punished under Article 15 (2-day AWOL) was one contemplated by the drafters of Mil.R. Evid. 313(b)(1) *, we believe that he otherwise correctly applied the proper standards for admissibility of the test results and his ruling will not be disturbed.

Accordingly, this court finds that the military judge did not err in granting the defense motion to suppress the results of the urinalysis test. The appeal is denied.

CANELLOS, Senior Judge, and CARPARELLI, Judge, concur.

* We believe the drafters were thinking more of situations wherein the commander conducts a blanket inspection to uncover the fruits (and the identity of the perpetrator) of a recently committed, unsolved crime.