UNITED STATES, Appellee,

v.

Private (E-2) Wyatt R. CZAPLA, 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, United States Army, Appellant.

SPCM 20322.

U.S. Army Court of Military Review.

21 Feb. 1986.

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Major Eric T. Franzen, JAGC, Captain Craig E. Teller, JAGC (on brief); Colonel William G. Eckhardt, JAGC, Lieutenant Colonel William P. Heaston, JAGC, Captain Harry L. Williams, Jr., JAGC, Captain Michael D. Graham, JAGC, Captain Rita R. Carroll, JAGC.

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Erik M. Stumpfel, JAGC (on brief); Lieutenant Colonel John T. Edwards, JAGC, Captain Samuel J. Rob, JAGC, Captain Thomas J. Benjamin, JAGC.

Before RABY, CARMICHAEL and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

CARMICHAEL, Judge:

■ Pursuant to his pleas, appellant was convicted by a military judge sitting as a special court-martial of separate specifications of wrongful possession, wrongful distribution, and wrongful use of hashish, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter cited as UCMJ]. The trial was completed on 28 October 1983. Major General (MG) Anderson, then commander of the 3d Armored Division, was the general court-martial convening authority before, during, and after appellant's trial. Appellant's sentence, as approved by MG Anderson, consisted of a bad-conduct discharge, three months confinement, forfeiture of $250.00 pay per month for three months, and reduction to the grade of Private E–1.[1]

Upon initial review, we affirmed the findings of guilty as to wrongful use and distribution of hashish, but found the specification alleging wrongful possession of hashish to be multiplicious for findings, see United States v. Bullington, 18 M.J. 164 (C.M.A. 1984); United States v. Zubko, 18 M.J. 378 (C.M.A. 1984), and dismissed it. We then set aside the sentence and authorized a sentence rehearing, citing as precedent this court's decision in United States v. Schroeder, 18 M.J. 792 (A.C.M.R. 1984) (when pervasive unlawful command influence is exerted against potential defense witnesses and, at trial, the absence of defense witnesses is not explained, there is a presumption that the accused suffered prejudice).[2]

On 7 May 1985, a rehearing on sentence was held and appellant moved for sentence

1. The convening authority erred in approving a reduction since none was adjudged. However, this error was of no practical significance since the convening authority's approval of the punitive discharge and confinement resulted in appellant's automatic reduction to Private E–1. Article 58a, UCMJ, 10 U.S.C. § 858a (1982).

2. See United States v. Czapla, SPCM 20322 (A.C. M.R. 31 Jan.1985)(unpub.).

relief[3] on the ground that he continued to suffer substantial prejudice as a result of unlawful command influence. Appellant testified on the motion concerning what he allegedly had been told by one Staff Sergeant (SSG) Shorter, his former section chief. Appellant testified that SSG Shorter had told him that he could not testify at his court-martial. The reason, as related to appellant by SSG Shorter, was that a Command Sergeant Major (CSM) Aurillo (phonetic) had said that if either SSG Shorter or SSG Martin, another of appellant's noncommissioned officer (NCO) supervisors, testified for appellant, Aurillo "would have their rank and their rear on a silver platter." Although the defense had requested numerous witnesses for the rehearing to include Shorter, Martin, and Aurillo, none of the requested witnesses were present. Thus, no other evidence was introduced in support of the motion.

Appellant's defense counsel informed the military judge that he had been unable to locate either SSG Shorter or SSG Martin because they both had left the Army. Further, he was unable to find anyone who had even heard of CSM Aurillo.

3. Appellant's requested sentence relief was to receive reduced forfeitures and no bad-conduct discharge.

4. The pertinent subsections of RCM 703(c) state that:

A list of witnesses whose testimony the defense considers relevant and necessary ... on an interlocutory question shall include ... a synopsis of the expected testimony sufficient to show its relevance and necessity.... A list of witnesses wanted for presentencing proceedings shall include the ... address or location of the witness such that the witness can be found upon the exercise of due diligence, a synopsis of the testimony that it is expected the witness will give, and the reasons why the witness' personal appearance will be necessary under the standards set forth in RCM 1001(e).

On 10 April 1985, appellant's counsel for the rehearing submitted a written request for 21 witnesses. No synopses of expected testimony were provided to the trial counsel. Instead, the trial counsel was asked to locate the witnesses and have them present for the "rehearing on sentence," or "for an Article 39a session on the issue of unlawful command influence" (Appellate Exhibit VII). Two days later the trial counsel

The trial counsel's position in response to appellant's motion was: first, that the sentence rehearing was unaffected by the unlawful command influence that existed at appellant's former command; and, second, that the government was not obliged to comply with the defense request for witnesses because the defense counsel had failed to comply with Rule for Courts-Martial [hereinafter cited as RCM] 703[4] The military judge, after observing that the defense counsel had not made a reasonable effort to set forth the expected testimony of the witnesses being requested, and citing the Air Force Court of Military Review's decision in *United States v. Young*, 49 CMR 133 (A.F.C.M.R. 1974), denied the motion because of the defense's failure to meet the requirements of RCM 703(c). Also, the military judge found that the defense had failed in its effort to show that the prior exercise of unlawful command influence carried over to appellant's rehearing.

At the conclusion of the rehearing, appellant was sentenced to a bad-conduct discharge, three months confinement, and re-

sel replied in writing that the witness request would not be acted upon until the defense complied with RCM 703 (Appellate Exhibit IX).

Subsequently, on 1 May 1985, six days before the rehearing on sentence was held, appellant's counsel made a written request for the same 21 witnesses previously requested. This second request stated that the listed witnesses would testify on such matters as the appellant's "duty performance and rehabilitation potential," "direct unlawful command influence" in the case, and appellant's "assistance to law enforcement personnel" (Appellate Exhibit VIII). On 2 May, the trial counsel responded by again noting that the witness request did not meet the requirements of RCM 703, and further noting that, with respect to unlawful command influence, the defense counsel's failure "to inform the government of the theory of any argument concerning unlawful command influence" made it impossible to determine the relevance of at least twelve of the 21 witnesses (Appellate Exhibit X). The trial counsel also made reference to the absence of sufficient facts to locate the defense witnesses, as well as the waning time left to arrange for their attendance. The posture of the case as to witnesses remained unchanged thereafter, and none of the witnesses requested by the defense were present at the sentence rehearing.

duction to Private E–1. The convening authority approved the sentence with the exception of the reduction, the latter punishment being in excess of the maximum authorized sentence.

■ Appellant's case now is before us for further review pursuant to Article 66, UCMJ, 10 U.S.C. § 866 (1982 and Supp. I 1983). Two errors are alleged. First, appellant asserts that the trial judge erred by failing to resolve the unlawful command influence issue involving the elusive CSM Aurillo which appellant contends was raised for the first time at the rehearing. Second, appellant asserts that MG Anderson's actions in the 3d Armored Division vis-a-vis the military justice system served to disqualify him from referring appellant's case to trial.

With respect to the latter assignment of error, appellant chooses to show what is arid ground in light of the doctrine of *stare decisis.* Our decisions in *United States v. Treakle,* 18 M.J. 646 (A.C.M.R. 1984) (en banc), *pet. granted,* 20 M.J. 131 (CMA 1985), and *United States v. Yslava,* 18 M.J. 670 (A.C.M.R. 1984) (en banc), *pet. granted,* 19 M.J. 281 (C.M.A. 1985), control the resolution of this issue. Simply stated, they preclude us from considering the question anew. Precedent dictates a result favorable to the government and, since appellant provides no basis for distinguishing his case from other 3d Armored Division cases decided by this court, we are bound by such precedent. Accordingly, we find that MG Anderson was not "disqualified" as a convening authority, and that his referral of appellant's case for trial was an exercise of *proper* pretrial procedure.

■ The remaining assignment of error raises what appears to be a novel issue in the panoply of 3d Armored Division cases considered by the Army Court of Military Review. The government states in its brief that "[a]ppellant's case presents a fact pattern virtually unique among the 3d Armored Division ... cases thus for [sic] litigated, *i.e.,* a factual claim by an accused that identifiable character witnesses were actually influenced by remarks of

a superior not to testify at trial." While we agree with the government's characterization of the facts, we, like the military judge, are not persuaded of their relevance to appellant's rehearing on sentence.

Because appellant was tried in an atmosphere where potential defense witnesses were subjected to pervasive unlawful command influence, and because, without explanation, he called no character witnesses during the sentencing portion of his original trial, we presumed that favorable witnesses had been influenced to his prejudice. *United States v. Czapla,* 21 M.J. 919, 921 (A.C.M.R.1985). A rehearing on sentence was determined to be an appropriate remedy because it would afford appellant a further opportunity to present evidence from any favorable character witnesses, thus assuring the fairness of the sentencing portion of his trial.

During his sentence rehearing, appellant gave credence to our prior presumption of prejudice by identifying a noncommissioned officer by name who refused to testify at his original trial. Appellant testified that this NCO, SSG Shorter, told him that he— Shorter—would not testify because of threats of reprisal made by a command sergeant major if he did so. The same command sergeant major threatened another potential witness, SSG Martin, or at least so appellant was told, but appellant never ascertained Martin's willingness to testify. For purposes of resolving this issue, however, we will presume that appellant did not approach SSG Martin about testifying because of what he had been told by SSG Shorter. We will further presume that SSG Martin had been unlawfully influenced, and would have refused to testify for appellant had he been asked to do so.

Unlawful command influence, once established, is mutable to the extent that the circumstances from which it arose change. In the case at bar, the rehearing was "far removed in time and place" from the command where appellant originally was tried. The two influenced witnesses were out of the Army and no longer susceptible to threats that their military careers would be

jeopardized if they testified for appellant. Before determining that an unlawful command influence issue had not been raised at the rehearing, the military judge engaged in the following colloquy with appellant's defense counsel:

MJ: Now, you also, in your argument, made the statement that the taint of illegal command influence could not be removed. Isn't that the purpose of the Army Court of Review directing that the case be sent to a different Convening Authority for consideration of a possible rehearing?

DC: In [sic] may well been, sir, but it seems to defy logic if that's what the court's trying to do since once you have that taint the mere fact that you are taking him [appellant] out of Germany or taking him away from the Command Sergeant Major or General Anderson is [not] going to have any real effect....

MJ: Well, what effect is it that cannot be removed by having a different unbiased, if you will, Convening Authority, take the actions that were improper originally? In other words, what is it that cannot be removed by removing the case from the person who exercised unlawful command influence?

DC: Well, you're never going to recreate the testimony of those individuals who would have testified at the initial hearing, or the initial trial, but for the unlawful command influence. Once that is destroyed by unlawful command influence that cannot be recreated.... We're saying that what occurred in Germany follows those witnesses wherever they may go and that merely bringing it to Fort Knox and have [the general court-martial convening authority] send it to a rehearing is not in any way going to effect what Command Sergeant Aurillo did or General Anderson.

MJ: Well, you have indicated previously that the best information available to you is that these two individuals are out of the Army.

DC: Yes, sir.

MJ: Now, if that were true how do you perceive that today, assuming those witnesses were available, if they had something favorable to say, that they would be afraid to say it because of what General Anderson did or Command Sergeant Major Aurillo did? If they are out of the Army what exercise of influence do you perceive would still exist?

DC: Well, they would have no direct sort of influence in that they are not worried then about promotions and not worried about anything like that, but they would still have the problem, sir, when they were initially told, you're not going to testify for this man [and] they did not. Now, whether they would now have anything good to say after a year and a half, whether they would remember back that far or whether they would remember what they would have testified to is uncertain.

Thereafter, the military judge, having concluded that there was "no evidence of continuing command influence," denied the motion for appropriate relief on the ground that the defense had failed to make a proper request for witnesses under RCM 703(c). He found that the requests were deficient because they failed to provide the government with adequate synopses of expected testimony.

We presumed that appellant was prejudiced at his court-martial because of the unexplained absence of favorable character witnesses. His testimony at the rehearing did not go beyond our presumption, but merely confirmed that appellant had in fact suffered the prejudice which we already had presumed. Thus, without question, appellant was entitled to the remedy which we provided him—a rehearing on sentence. The strategy adopted by appellant and his counsel at the rehearing are not the business of this court absent the discovery of prejudicial error. Such error does not ap-

pear in this case. Appellant attempted to raise a separate and distinct issue of actual unlawful command influence at his rehearing and failed. Accordingly, there is no need to consider whether a rebuttable presumption of prejudice was triggered, *United States v. Treakle*, 18 M.J. 646, or whether the burden of persuasion was otherwise shifted to the government, *United States v. Cruz*, 20 M.J. 873 (A.C.M.R.)(en banc), *pet. filed*, 20 M.J. 412 (C.M.A.1985).

Appellant's rehearing on sentence was held in a different command and convened by a different convening authority. The allegedly unlawfully influenced witnesses had not only departed the command where the influence occurred, but had left the Army altogether. There is no evidence that the witnesses in question would have refused to testify for appellant if a proper request had been made for their appearance. Under these circumstances, we find that the military judge properly ruled that the actual unlawful command influence that prejudiced appellant at his court-martial did not extend to his rehearing. Since a separate unlawful command influence issue was not raised at the rehearing, and since appellant was afforded an adequate remedy vis-a-vis the rehearing to cure the prejudice he suffered during his original trial, the military judge was correct in viewing appellant's witness requests as nothing more than requests for character witnesses. He also was correct in ruling that the synopses of expected testimony in the requests were inadequate to trigger the government's obligation under RCM 703(c). Thus, he did not err in denying the defense motion for appropriate relief.[5]

Appellant's defense counsel, in support of his motion for appropriate relief, argued that the only remedy for removing the taint of the allegedly continuing unlawful influence was to adjudge "limited" forfeitures and no discharge. Although the military judge denied the motion, we note that he imposed a sentence which did not in-

clude a forfeiture of pay. Since we are satisfied that appellant's interests now have been fully safeguarded, that is, he has received a sentence rehearing free from the stigma of unlawful influence, further relief is not warranted.

Accordingly, the decision of this court, dated 31 January 1985, affirming the findings of guilty of wrongful use and distribution of hashish, remains in effect. The sentence is affirmed.

Judge ROBBLEE concurs.

Senior Judge RABY took no part in the decision of this case.

---

5. Had appellant's defense counsel acted to provide adequate synopses of testimony, it would seem highly probable that the government would have been willing to stipulate to the expected testimony of some, if not all, of the requested character witnesses.