UNITED STATES, Appellee,

v.

Specialist Richard J. HART,
280–76–0745, United States
Army, Appellant.

ACMR 8702407.

U.S. Army Court of Military Review.

13 Jan. 1989.

For Appellant: Captain Alfred H. Novotne, JAGC (argued); Lieutenant Colonel Joel D. Miller, JAGC, Captain Donald G. Curry, Jr., JAGC, Captain Brian D. Bailey, JAGC (on brief).

For Appellee: Captain Patrick D. O'Hare, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Gary L. Hausken, JAGC (on brief).

Before FELDER, GILLEY, and GIUNTINI, Appellate Military Judges.

OPINION OF THE COURT

GILLEY, Judge:

Contrary to the appellant's pleas, a general court-martial consisting of officer and enlisted members found him guilty of assault by intentionally inflicting grievous bodily harm, disorderly conduct, and maiming, in violation of Articles 128, 134, and

124, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 928, 934, and 924, respectively. The convening authority approved the sentence of a bad-conduct discharge, confinement for three years, total forfeitures, and reduction to the grade of Private E1.

The appellant asserts that the conviction for maiming cannot stand because the trial counsel withheld exculpatory and other material from the defense. We find that, even if the trial counsel should have provided this information, the appellant suffered no prejudice. Accordingly, we affirm this conviction.

Factually, this case involved determining whether it was the appellant who bit off a significant part of Private E1 (PV1) Oyler's left ear. The maiming occurred just outside the Crystal Palace Cafe where Oyler had just previously had a fight with a person a witness identified as the appellant. This witness and two others testified that the appellant and Oyler resumed the fight outside the Crystal Palace. According to Oyler and the three witnesses, the appellant stated that he should bite off Oyler's ear to teach him a lesson and that he proceeded to bite off a piece of Oyler's ear.

The appellant defended on the basis of alibi. A soldier testified that the appellant was with him, away from the vicinity of the Crystal Palace, during the evening in question. Three acquaintances of the appellant testified that they did not see the appellant at the Crystal Palace that night. One of them, a man of similar stature and features as the appellant, testified that he was at the Crystal Palace that evening. He also testified that later that evening he was accused by Oyler's friends of having maimed Oyler and that he had been confused with the appellant before. He testified that he did not witness the fight in question. A criminal investigator testified that the appellant had told him that he did not think he was involved in the incident, but called back later to say that he was responsible for the maiming because his friends told him that he was there. The appellant acknowledged calling a criminal investigator but denied telling the investigator that he was responsible for the maiming.

Private E1 Oyler testified that he was drunk that night and did not know the appellant was his assailant until he later saw him in person. However, he equivocated by testifying that he was only "pretty sure" of the identification. In contrast, three other government witnesses identified the appellant with great certitude. Notably, two of these witnesses were reluctant to come forward because they feared reprisal by the appellant.

The appellant contends that the government bears full responsibility for pertinent information not reaching the defense before trial. Specifically, he did not receive the sworn statements of one defense and two other potential witnesses, laboratory reports concluding that the maimer did not leave a chemical identifier on the ear, and information that Oyler did not select anyone as his assailant from a photographic line-up that included the appellant. Yet, the trial defense counsel had received a draft criminal investigation report that described in pertinent detail the sworn statements of the three soldiers, one of whom had claimed at one point that he had bitten off the ear. The defense called only one of them as a witness. This draft report also noted that certain material had been sent to a laboratory. In fact, a laboratory report showed that neither the appellant's nor anyone else's saliva was found on the ear fragment. The trial counsel has stated by affidavit that he thought the final criminal investigation report containing all this information had been sent in the normal course to the defense counsel. Of course, the defense counsel could have obtained the final report by asking for it. It was completed thirty-five days before the trial. Moreover, the defense counsel knew that the incident occurred almost four months before trial and that an interim criminal investigation report was issued about twenty days after the incident.

The final criminal investigation report also stated that Oyler had not been able to pick the appellant from a photographic line-up. We have no evidence that this information reached the defense counsel before trial, but we do have evidence, per the trial defense counsel's affidavit, that it did not. In fact, the trial counsel has added, by affidavit, that he decided not to notify the defense counsel that the victim had failed to identify the appellant at the photographic line-up. He thought he did not have to because he had not planned to introduce this information in evidence. Consistent with this explanation, the trial counsel notified the defense counsel that he planned to introduce the appellant's statement to the criminal investigator and a photographic identification of the appellant by the victim of the unrelated assault of which he was convicted.

■ In *United States v. Eshalomi,* 23 M.J. 12 (C.M.A.1986), the Court of Military Appeals discussed the standards of review, for reversible error, when the defense has not received all the material or sources of information the Government has that could be pertinent to a given case. The court noted the Supreme Court's touchstone that the information not provided to the defense had to be material. Suppression by the prosecution of evidence favorable to the defense, which requested it, "violates due process where the evidence is *material* either to guilt or to punishment, *irrespective of the good faith or bad faith of the prosecution.*" *Id.* at 21 (quoting from *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) (emphasis added in *Eshalomi*)). The "materiality" standard differs for three situations: (1) where the prosecution knew or should have known that a witness had given perjured testimony, a conviction must "be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392,

2397, 49 L.Ed.2d 342 (1976) (because of prosecutorial misconduct, but more importantly, because the truth-seeking function of the trial process was corrupted); (2) when the defense requested specific information, and the prosecution failed or refused to provide it, the court must determine whether the suppressed evidence might have affected the outcome of the trial. *Id.* at 104, 96 S.Ct. at 2397–98; and (3) when the defense has made only a general request for exculpatory evidence or information, the court must examine the entire record, including the withheld information, to determine whether there is a reasonable doubt that did not otherwise exist regarding the accused's guilt or an appropriate sentence. *Id.* at 112–13, 96 S.Ct.at 2401–02.

■ The Court of Military Appeals also discussed *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), where the justices restated the materiality standard. Specifically, (1) the fact that testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt; and (2) all other information is material only if there is a reasonable probability that, had the evidence been disclosed, the result would have been different. *Id.* at 679–682, 105 S.Ct. at 3382-3384 (Blackmun, J., with O'Connor, J., concurring and White, J., with Burger, C.J., and Rehnquist, J., joining, concurring in application of the second standard to that case). The Court of Military Appeals went on to observe, without deciding, that Article 46, UCMJ, 10 U.S.C. § 846,[1] or Rule for Courts–Martial 701(a)(1)(C) may impose stricter standards for nondisclosure of information to the defense. In our view, there is no logic for us to conclude that the Article 46, UCMJ, or Rule for Court–Martial 701(a)(1)(C) deletes materiality as a requirement for setting aside findings or sentence reassessment. *Cf. United States v. Eshalomi,* 23 M.J. at

---

1. Article 46, UCMJ, provides pertinently:
   The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe.

24. But, we do adopt the view suggested in *Eshalomi* that Congress has provided more generous discovery for military than for civilian accused. Indeed, military accused have an equal opportunity to this information. Accordingly, in our opinion the following materiality standards apply in the military: (1) the use of perjured testimony or equivalent prosecutorial misconduct or neglect is material unless failure to disclose the information would be harmless beyond a reasonable doubt, regardless of good or bad faith of the prosecution; (2) failure to disclose information specifically requested by the defense is material unless failure to disclose it would be harmless beyond a reasonable doubt; and, (3) failure to disclose all other information, whether pursuant to a possible regulatory disclosure requirement, a "standing request," or a "general request," is material only if there is a reasonable probability that, had the evidence been disclosed, the result would have been different.

█ In this jurisdiction the government normally provided all pertinent information to the trial defense counsel without the necessity of any defense request. We treat this practice as amounting to a general request for information by the defense. Therefore, failure to disclose the information in issue is material only if there is a reasonable probability that, had the evidence been disclosed, the result would have been different.

In applying this "reasonable probability" standard, we find that the victim's failure to identify the appellant at a photographic line-up was not significant. Moreover, one normally has a better opportunity to identify another in person based on such features as height, overall size, and hand size. The victim acknowledged at trial that the later, in-person identification he made was weak. In addition, the other identifications of the appellant by the government witnesses leave no doubt that appellant was the person who maimed PV1 Oyler. Also, the laboratory report was neutral in result, and not exculpatory. Finally, the testimony of the defense or government witnesses would not have been affected by the sworn statements not provided to appellant. Nor would the findings have been affected had these sworn statements been introduced into evidence. In the statements, one person recounted how he falsely claimed to his friends that he had bitten off the ear, another reiterated the false account, and the other did not witness the fight.[2]

In this situation, we must use our fact-finding power under Article 66, UCMJ, 10 U.S.C. § 866, to determine whether, based on all the evidence in the record and beyond a reasonable doubt, the appellant was the one who maimed PV1 Oyler. We find that the evidence so established the appellant's guilt. Moreover, we find neither reasonable probability of different findings nor reasonable doubt of the appellant's guilt had the undisclosed information been admitted or otherwise properly presented at trial.[3]

We have considered the issues raised personally by the appellant and they are without merit.

The findings of guilty and the sentence are affirmed.

**2.** Even if we were to apply the materiality standard most favorable to the defense, we are convinced that the trial counsel's failure to disclose the information was harmless beyond a reasonable doubt.

**3.** We find that this case is not under the first test of materiality we describe because prosecutorial suppression, even in good faith, is not established here. This finding also obviates the need to address the issue of ineffectiveness of counsel. Despite the automatic discovery practice in that jurisdiction, arguably the defense counsel should have known the criminal investigation report was final and late or misplaced in delivery to him. Even if the defense counsel was incompetent in not obtaining the materials in question, that incompetence did not affect the outcome of the trial. *See United States v. Scott*, 24 M.J. 186 (C.M.A.1987) (applying *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We have confidence that *Hart* will be instructive to both trial and defense counsel. Both counsel should help ensure that commendable liberal discovery practices are administered properly and reliably. *See United States v. Eschalomi*, 23 M.J. at 24.

Senior Judge FELDER * and Judge GIUNTINI concur.