UNITED STATES

v.

Robert K. HENRIQUES, Jr., 557 65 1755, Quartermaster Seaman Recruit (E–1), U.S. Navy.

NMCM 90 2172.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 22 Jan. 1990.

Decided 8 Feb. 1991.

LT Ruth M. Medeiros, JAGC, USNR, Appellate Defense Counsel.

Maj Rose M. Favors, USMC, Appellate Government Counsel.

Before MITCHELL, FREYER and HOLDER, JJ.

FREYER, Judge:

The appellant was charged with two specifications of desertion based on absences without leave from 24 October 1988 to 11 January 1989 and 13 February 1989 to 29 November 1989, respectively, the latter terminated by apprehension. He pled guilty to the lesser offense of absence without leave under the first specification and was found guilty in accordance with his pleas; he pled not guilty to the second specification but was convicted of desertion as charged. His sentence, which reaches us unchanged, provides for confinement for 145 days, forfeiture of $400.00 pay per month for four months, and a bad-conduct discharge.

Only the second specification is at issue. On his not guilty pleas, the appellant was called to testify, and, on direct examination, he testified, in part, as follows:

A. .... I was told if you are gone for more than 10 months that your ship no longer had jurisdiction over you. If you were gone for 10 months, whatever base you turned yourself in to, that would be the base that court-martialed you or did whatever; processed you out of the Navy, or punished you in whatever way they thought was appropriate. I planned on staying gone for 10 months and returning myself back in to Philly again and just letting Philadelphia process me out.

Q. Because you didn't want to go back on the SURIBACHI?

A. Because I did not want to go back to the SURIBACHI.

In further describing his motivations, the appellant testified: "I didn't want to be a deserter. I just wanted to get away from my ship." His direct examination culminated in the following exchange:

Q. And on both of these occasions, Seaman Recruit Henriques, you did always intend to return to the Navy?

A. I always did intend to return to the Navy. I do not want to be a deserter from the Navy.

It should be noted that the appellant's expression of his intent never to return to his unit was an integral part of a doomed attempt to formulate a duress defense based on alleged unsafe working conditions aboard the USS SURIBACHI. Not only was the appellant's testimony regarding such conditions so nonspecific and uncorroborated as to leave doubt about whether or not the attempt to raise a duress defense was even a serious one, but such defense was also virtually extinguished by the defense counsel on redirect examination, when the following exchange occurred:

Q. Now, Seaman Recruit Henriques, on Specification 2 you were gone approxi-

mately 10 months. On cross-examination Lieutenant Sigler asked you if you could have returned at any time. Now, why, again, is it that you stayed away approximately 10 months?

A. Because I did not want to return to the USS SURIBACHI. I wanted to be able to turn myself in to another base and have that base handle me. I did not feel that turning myself in to the USS SURIBACHI I would get fair treatment.

As if to reinforce the non-duress basis for the absence without leave, the defense called a third class petty officer to testify, not about any unsafe conditions, but about the appellant's conflicts with authority and arguably unsympathetic treatment by his superiors in USS SURIBACHI. In addition, various personal considerations were mentioned in connection with the absence without leave alleged in the first specification, and it was inevitable that a trier of fact would infer that those considerations, or at least a slightly updated form thereof, played some part in motivating the second absence.

Consequently, the net effect of the appellant's testimony was that, when he absented himself from his unit on 13 February 1989, and throughout the succeeding absence without leave, he intended never to return to his unit, although he did intend to return to "the Navy"; and such admission was the cost of raising a feeble duress defense in this case, the failure of which virtually guaranteed conviction of desertion, vice mere absence without leave.

On the above state of the record, we specified the following issue:

WAS THE APPELLANT DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL IN RELATION TO SPECIFICATION 2 OF THE CHARGE WHERE, UPON HIS PLEA OF NOT GUILTY, HE WAS CALLED AS A DEFENSE WITNESS TO TESTIFY, INTER ALIA, TO HIS INTENT TO RETURN TO THE NAVY BUT NEVER TO RETURN TO HIS UNIT, PRESUMABLY BECAUSE OF A BELIEF ON THE PART OF HIS DEFENSE COUNSEL THAT THE INTENT TO RETURN TO THE NAVY, EVEN IF ACCOMPANIED BY AN INTENT NEVER TO RETURN TO ONE'S UNIT, NEGATED DESERTION, AND WAS THEREAFTER CONVICTED OF DESERTION?

If the defense counsel intended to risk a sure desertion conviction on successfully raising a duress defense, it was incumbent on her to be prepared to present at least a creditable duress defense. We do not know what, if any, investigation she made of conditions in USS SURIBACHI, but it seems to us that, if it disclosed that such conditions did, indeed, present an imminent danger of death or serious bodily injury, there should have been an abundance of witnesses, JAG Manual investigation findings, type commander inspection reports, etc., that could have been offered to prove the true situation. If, however, the defense counsel's inquiries failed to establish a basis for a duress defense having any reasonable likelihood of success, we deem it highly imprudent to have raised it at the cost of placing the appellant in the witness box to admit his intent to remain away from his unit permanently. Nor are we much impressed with the contention, expressed in her affidavit, that the military judge might have applied the wrong legal standard so as to require proof of intent to remain away permanently from "the Navy," vice one's unit, before finding the appellant guilty of desertion.

Before we may determine that the appellant is entitled to relief, there must be a reasonable probability that, but for the defense counsel's decision to place the appellant in the witness box to admit his intent to remain absent from his unit permanently, the appellant would have been found guilty under Specification 2 of no more than absence without leave. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Babbitt*, 26 M.J. 157 (C.M.A.1988); *United States v. Scott*, 24 M.J. 186 (C.M.A.1987).

In this regard, we find that this case lies somewhere between *United States v. Amundson*, 32 C.M.R. 724 (C.G.B.R.1962) and *United States v. Colarusso*, 18 U.S.C. M.A. 94, 39 C.M.R. 94 (1969). In *Amund-*

835

*son*, the accused testified to facts amounting to an admission of guilt, but the Government had already introduced a corroborated pretrial statement of the accused establishing each element of the offense. In *Colarusso, per contra*, after having prevailed on a motion to suppress a contraband article, without which the Government could not have prevailed on the merits, the accused took the stand and admitted possession of the contraband. This case differs from *Amundson* in that the evidence of the appellant's intent to desert, apart from his own testimony, was far from conclusive; it also differs from *Colarusso*, however, in that such evidence, apart from the appellant's own testimony, was not inadequate *as a matter of law* to support a finding of desertion.

We, nevertheless, perceive a reasonable probability that, but for the appellant's own testimony, he would have been found guilty under Specification 2 of no more than absence without leave. This conclusion, we think, although based on factual sufficiency, vice legal adequacy, brings this case within the ambit of *Colarusso*, vice *Amundson*, in light of the *Strickland–Babbitt–Scott* standard.

So much of the finding of guilty of Specification 2 as includes the words "and with intent to remain away therefrom permanently" and "in desertion," and so much of the finding of guilty of the Charge with respect to Specification 2 as is in excess of a violation of Article 86, 10 U.S.C. § 886 are set aside. As thus modified, the findings of guilty are affirmed. The sentence has been reassessed in accordance with *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and, upon reassessment, only so much thereof is affirmed as provides for confinement for 145 days, forfeiture of $400.00 pay per month for two months, and a bad-conduct discharge.

Senior Judge MITCHELL and Judge HOLDER concur.