UNITED STATES, Appellee

v.

Frank J. OSHESKIE, Machinist's Mate Second Class
U.S. Navy, Appellant

No. 05-0165

Crim. App. No. 200001296

United States Court of Appeals for the Armed Forces

Argued January 10, 2006

Decided August 14, 2006

CRAWFORD, J., delivered the opinion of the Court, in which
GIERKE, C.J., and EFFRON, BAKER, and ERDMANN, JJ., joined.


Counsel

For Appellant:  Lieutenant Aimee M. Cooper, JAGC, USNR (argued);
Captain James Valentine, USMC (on brief).

For Appellee:  Captain Roger E. Mattioli, USMC (argued);
Commander Charles N. Purnell, JAGC, USN, and Lieutenant
Guillermo J. Rojas, JAGC, USNR (on brief).


Military Judge:  Robert W. Redcliff


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Osheskie, No. 05-0165/NA

Judge CRAWFORD delivered the opinion of the Court.

In accordance with his plea, Appellant was convicted by a military judge at a general court-martial of murder while engaging in an act inherently dangerous to another in violation of Article 118(3), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 918(3) (2000).  The Government proceeded to trial on the greater offense of unpremeditated murder in violation of Article 118(2), UCMJ, however, Appellant was found not guilty of this offense.  Appellant was sentenced to confinement for twenty-seven years, forfeiture of all pay and allowances, reduction to E-1, and a dishonorable discharge.  Pursuant to the terms of the pretrial agreement, the convening authority suspended all confinement in excess of nineteen years from the date of his action, suspended the forfeitures of pay for nineteen years,[1] and approved the remainder of the sentence with the exception of the dishonorable discharge.

### STATEMENT OF THE ISSUES

On September 15, 2005, this Court granted review of the following issues:

I.  WHETHER THE LOWER COURT ERRED WHEN IT HELD THAT APPELLANT RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL

---

[1] Appellant has not challenged the terms of this suspension. Also the Government has not attempted to vacate this suspension. It is not presently necessary that we address whether the suspension of forfeitures for this period was an "unreasonably long" period of probation, which is prohibited by Rule for Courts-Martial. 1108(d).  See Spriggs v. United States, 40 M.J. 158, 162-63 (C.M.A. 1994).

WHEN THE TRIAL DEFENSE COUNSEL FAILED TO ADEQUATELY INVESTIGATE THE FACTS AND CIRCUMSTANCES OF HIS CASE AS WELL AS A POTENTIAL DEFENSE TO THE CHARGE OF PREMEDITATED MURDER.  IN DOING SO, THE LOWER COURT EXPRESSED A STATEMENT OF CONFIDENCE IN APPELLANT'S GUILT THAT WAS BASED UPON EVIDENCE RELATED TO A CHARGE OF WHICH APPELLANT WAS ACQUITTED.[2]

II. WHETHER APPELLANT WAS DEPRIVED OF HIS RIGHT TO TIMELY REVIEW WHEN ALMOST FIVE YEARS PASSED BETWEEN THE DATE OF SENTENCE AND COMPLETION OF REVIEW PURSUANT TO ARTICLE 66, UNIFORM CODE OF MILITARY JUSTICE.

## STATEMENT OF FACTS

Appellant was stationed in Pearl Harbor, Hawaii, as a Machinist's Mate Second Class.  While stationed there, Appellant lived in base housing with his wife and two children, including the victim, AO, Appellant's daughter, who was three and a half months old.  The events in this case occurred on the morning of May 10, 1998.  The night before, Appellant had been up with AO

---

[2] Appellant's assertion that the lower court erroneously considered evidence related to a charge of which Appellant was acquitted must be considered in context.  As the Government reserved its right to try to prove, and went forward with, the greater charge of intentional murder (pursuant to Article 118(2), UCMJ), the lower court had a complete record to review in determining whether Appellant received effective assistance of counsel.  Appellant told his trial defense counsel about using the "laying of the hands" method to put his children to sleep on prior occasions.  The lower court sought and received affidavits from both trial defense counsels.  In determining whether it was error for the trial defense counsel not to raise this defense, the lower court was able to look at what evidence was presented against Appellant and, therefore, what effect, if any, this could have had on his case.  We reject Appellant's assertion that the lower court erred in its consideration of the evidence of record in evaluating his ineffective assistance of counsel claim.

twice.  According to Appellant, because May 10, 1998, was

Mother's Day, he let his wife sleep in and made her breakfast in

bed.  At roughly 10:30 a.m., AO again began to cry and Appellant

went to attend to her.  Appellant contends he was frustrated and

tired because his wife rarely assisted with the child care even

though Appellant worked all week.  Appellant notes he placed AO

face down in her crib, covered her with a blanket, and placed

his left hand between her shoulder blades, holding her down with

his left hand in an attempt to make her lie still.  Appellant

admits to feeling her struggle but continued to apply pressure

until she was still and quiet.  Although he claims he was

concerned for AO, Appellant left the room for approximately

thirty minutes.  At that point, Appellant looked in on AO.

Finding her unresponsive, Appellant performed CPR on AO until

paramedics arrived.  AO could not be revived and was pronounced

dead at the hospital.

## ISSUE I

This Court reviews ineffective assistance of counsel claims

de novo.  United States v. Wiley, 47 M.J. 158, 159 (C.A.A.F.

1997).  In Strickland v. Washington, 466 U.S. 668 (1984), the

Supreme Court established the following test for determining

ineffective assistance of counsel:

> A convicted defendant's claim that counsel's
> assistance was so defective as to require reversal of
> a conviction or death sentence has two components.
> First, the defendant must show that counsel's

> performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687. This Court has followed the Strickland analysis when dealing with claims of ineffective assistance of counsel. United States v. Burt, 56 M.J. 261, 264 (C.A.A.F. 2002).

The Strickland test governs ineffective assistance of counsel claims in cases involving guilty pleas. United States v. Alves, 53 M.J. 286, 289 (C.A.A.F. 2000). Because this is a guilty plea case, Appellant must show not only that his counsel was deficient but also that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Id. at 289 (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)). United States v. Ginn, 47 M.J. 236 (C.A.A.F. 1997), furnished a number of circumstances where, despite an appellant's submission of an affidavit, this Court determined it could independently resolve the factual and legal issues in the case. Id. at 248. One of those circumstances is, "[I]f the affidavit is factually adequate on its face but the appellate filings and the record as

5

a whole 'compellingly demonstrate' the improbability of the facts." Id. This is the situation we find before us today.

Appellant makes two basic assertions of inadequate performance of counsel:

(1) defense counsel did not adequately investigate the circumstances of AO's death and potential defenses, such as accident or mistake, that might have resulted in his acquittal or mitigated the seriousness of the finding of guilty, including learning that the "laying of the hands" technique is a medically accepted method for calming crying children; and

(2) defense counsel did not advise Appellant of his right to plead guilty without a pretrial agreement to lesser included offenses, which included involuntary manslaughter and negligent homicide. We address these claims in order.

Failure to Investigate

Appellant contends that he received ineffective assistance of counsel because his trial defense counsel did not investigate the "laying of the hands" child care technique.[3] In their post-trial affidavits, both members of Appellant's trial defense team admitted that they did not investigate the "laying of the hands"

---

[3] Appellant asserts that his actions that resulted in AO's death were in line with an accepted child care technique called "laying of the hands" in which a parent applies light pressure to a child's back in order to calm the child so that he or she can sleep.

technique.  However, this does not amount to an ineffective assistance of counsel.

In United States v. Brownfield, 52 M.J. 40, 42 (C.A.A.F. 1999), this Court ruled that, "Defense counsel must perform a reasonable investigation, or make a reasonable decision that an avenue of investigation is unnecessary."  This principle was first explained by the Supreme Court in Strickland, 466 U.S. at 691.  In the case at bar, it is clear that Appellant's trial defense counsel determined that investigating the "laying of the hands" technique was unnecessary.  As Mr. Richard M. Harper II (formerly lieutenant) stated in his affidavit:

> I did not investigate whether light rubbing or "the laying of hands" had received the imprimatur of professional acceptance as a method of soothing or quieting a fussy infant.  After my many conversations with MM2 [Machinist's Mate] Osheskie, it was my understanding that MM2 Osheski[e] did not merely lay his hands on [AO], but rather pushed her so hard into the mattress that he knew that his actions were inherently dangerous to [AO].

The defense team did not make an arbitrary decision not to investigate the "laying of the hands" technique.

Lieutenant (LT) Marcus N. Fulton described how the defense team reasonably determined this avenue did not need further investigation:

> During a pretrial interview in my office, Dr. Ophoven [a Government expert] told me that Petty Officer Osheskie would have seen AO flail about with her body, arms and legs and struggle to move her head and get air.  I was told Petty Officer Osheskie would have been able to hear her cry through the mattress, crying

7

>    she described to me as "high gear" crying or
>    screaming.  Dr. Ophoven told me that a great deal of
>    force would have been necessary to smother [AO].  Dr.
>    Ophoven told me that this would have likely gone on
>    for two minutes or more, a duration with which other
>    physicians I interviewed agreed.  With respect to his
>    statement that he had [previously used the "laying of
>    hands" technique with his older child when he] pressed
>    on his son's back, I believed that either he had
>    applied only a soothing amount of pressure, or that he
>    had smothered [his son] to the point of
>    unconsciousness without killing him.  I did not view
>    either possibility as helpful in terms of showing that
>    Petty Officer Osheskie did not commit an inherently
>    dangerous act with wanton disregard of human life when
>    he pressed [AO]'s face into the mattress.

According to Appellant's trial defense counsel, they did not find the "laying of the hands" technique a plausible defense given the facts of the case, based on interviews with expert witnesses and the statements of Appellant.  The amount of force and time required to kill AO, as well as the physical distress AO would have demonstrated when Appellant was holding her face into the mattress, negated the need to pursue a "laying of the hands" theory for AO's death.

During the providence inquiry, Appellant admitted to the elements of Article 118(3), UCMJ, which would have made investigation into the "laying of the hands" theory irrelevant because he stated that he knew "that death was a probable consequence" of his actions.  The military judge fulfilled his duty in ensuring a knowing, voluntary guilty plea during the inquiry:

8

> MJ: Can you explain to me, in your own words, if you can, how it is that your act was inherently dangerous, under these circumstances? What is it that you did which would be inherently dangerous, under these circumstances, to someone the size of [AO]?
>
> ACC: I was well larger than [AO]. She was young. She was definitely not fully developed. She didn't have the strength to fight me. She couldn't verbalize, either. She couldn't say it hurt.

Appellant goes on to admit that he knew his actions were inherently dangerous to AO. Appellant's statements during the providence inquiry are consistent with his trial defense counsels' affidavits, not his own.

The decision not to investigate further was reasonably made, and therefore there was no deficiency in counsel performance. See United States v. Scott, 24 M.J. 186, 192-93 (C.M.A. 1987) (concluding counsel failed to investigate adequately). We need not address the second prong of the Strickland analysis.

Advice of Right to Plead Guilty to Lesser Included Offenses

In his affidavit, Appellant states, "At no time was I advised that I could plead guilty to a lesser-included offense such as negligent homicide or involuntary manslaughter without an agreement with the convening authority. This option was never explained to me prior to trial."

Appellant's trial defense counsel told a different story. As stated above, both of Appellant's trial defense counsels submitted affidavits to the court below. Regarding Appellant

9

pleading guilty to either a violation of Article 119, UCMJ, or

Article 134, UCMJ, 10 U.S.C. § 934 (2000), Mr. Harper wrote:

> I completely disagree with MM2 Osheskie's statement that we did not advise him he could plead to these lesser included offenses without a pretrial agreement.  On more than one occasion, when MM2 Osheskie expressed exasperation at having to plead guilty to Art. 118(3) in order to obtain a pretrial agreement limiting confinement, we informed MM2 Osheskie that he could plead guilty to a lesser offense without a pretrial agreement.  We also informed MM2 Osheskie of the government's statement that if MM2 Osheskie [pled] blind to a lesser included offense, the government would go forward in an attempt to prove premeditated murder.

Appellant's other trial defense counsel corroborated Mr.

Harper's statements.  In his own affidavit, LT Fulton wrote:

> During the course of preparation for the case, we reviewed with Petty Officer Osheskie what his options were concerning the case.  Among the options we discussed were the possibilities that he could plead to one of the lesser included offenses of Article 118 such as Article 119 involuntary manslaughter or Article 134 negligent homicide.  We informed him that he would not receive the benefit of an agreed to cap on punishment, and that if he was found guilty as charged he would be facing a mandatory minimum sentence of confinement for life.

Appellant presents no evidence, other than his own statements,

to prove that trial defense counsel did not explain that he

could plead guilty to a lesser included offense.  In light of

both trial defense counsels' affidavits, Appellant cannot carry

his burden to show a deficiency based on this claim.  Defense

counsels' responding affidavits, taken in context with the

record as a whole, particularly Appellant's own statements

10

United States v. Osheskie, No. 05-0165/NA

during the providence inquiry regarding his satisfaction that he had considered any possible defense arising from the circumstances, demonstrate the improbability of his assertion. See Ginn, 47 M.J. at 248 (no affidavit required under the principles set forth).

## ISSUE II

We review claims of post-trial and appellate delay using the four-factor analysis from Barker v. Wingo, 407 U.S. 514, 530 (1972). United States v. Moreno, 63 M.J. 129, 135 (C.A.A.F. 2006).[4] If there has been a denial of due process, an appellant is entitled to relief unless the court is convinced that the error was harmless beyond a reasonable doubt. United States v. Toohey, 63 M.J. ___ (24) (C.A.A.F. 2006). Where we can determine that any violation of the due process right to speedy post-trial review and appeal is harmless beyond a reasonable doubt, we need not undertake the four-factor Barker analysis prior to disposing of that post-trial or appellate delay issue. See United States v. Allison, 63 M.J. ___ (15) (C.A.A.F. 2006). In this case, we conclude that even if Appellant was denied his due process right to speedy review and appeal, that error is harmless beyond a reasonable doubt and no relief is warranted.

---

[4] We apply the analysis from the majority opinion in Moreno, but see Moreno, 63 M.J. at 144 (Crawford, J., concurring in part and dissenting in part).

11

## CONCLUSION

Appellant has failed to prove either prong of the Strickland test with respect to his allegations of ineffective assistance of his trial defense counsel. Appellant's trial defense counsel were competent in their representation and there has been no showing that Appellant was prejudiced by the counsels' actions and advice. In fact, Appellant's trial defense counsel, through the pretrial agreement, saved Appellant from one-third of his adjudged sentence. Therefore, pursuant to our decision in Ginn, 47 M.J. at 248, we hold that the record as a whole "compellingly demonstrate[s]" the improbability of Appellant's post-trial affidavit. Accordingly, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.