**UNITED STATES, Appellee,**

v.

**Craig D. BROWNFIELD, Seaman
Apprentice, U.S. Navy,
Appellant.**

No. 98–0795.
Crim.App. No. 93–1483.

U.S. Court of Appeals for
the Armed Forces.

Argued May 12, 1999.

Decided Sept. 28, 1999.

COX, C.J., delivered the opinion of the Court, in which SULLIVAN, CRAWFORD, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Lieutenant Junior Grade M. Eric Eversole*, JAGC, USNR (argued); *Lieutenant Commander R.C. Klant*, JAGC, USN (on brief); *Lieutenant Jeffrey K. Van Nest*, JAGC, USN.

For Appellee: *Lieutenant Margaret E. Jolly*, JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, JAGC, USN (on brief); *Captain Paul D. Kovac*, USMC.

Chief Judge COX delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted at special court-martial by a military judge sitting alone of one specification of making a false official statement and three specifications of carnal knowledge.[1] Appellant was sentenced to confinement for 3 months, forfeiture of $520.00 pay per month for a period of 3 months, reduction to pay-grade E–1, and to be discharged from the Navy with a bad-conduct discharge. The convening authority approved the adjudged sentence.

The Court of Criminal Appeals ordered a *DuBay*[2] hearing on December 21, 1994, to investigate appellant's claim of ineffective assistance of counsel. At the *DuBay* hearing, three persons testified: (1) the original detailed trial defense counsel; (2) appellant's former Navy friend—Mr. David Belton; and (3) appellant. Additionally, the parties entered into a stipulation of expected testimony to address the substance of appellant's meeting during trial with defense counsel's supervisor. If called to testify, the supervisor would have stated that she had a conversation with appellant during trial, in which appellant appeared upset because he perceived his defense counsel was angry at him for not accepting a favorable plea agreement, and was yelling at him. She also stated, however, that appellant did not complain about his defense counsel's performance and stated to her that he believed his defense counsel was competent and ready to go to trial.

After the *DuBay* hearing was completed, the court below affirmed appellant's convictions, essentially finding that while appellant's trial defense counsel was deficient in some areas, these deficiencies did not prejudice appellant under all of the circumstances. That court, 1998 WL 238613 also found that the military judge did not abuse his discretion in denying a continuance request to locate the alibi witness, although that court

---

1. The false official statement was in violation of Article 107, Uniform Code of Military Justice (UCMJ), and the carnal knowledge offenses were in violation of Article 120, UCMJ, 10 USC §§ 907 and 920, respectively.

2. *See United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967).

opined that if the military judge had granted the request, he could have avoided the expenditure of significant resources in connection with this litigation. Unpub. op. at 8.

We granted three issues.[3] Appellant asks this Court to set aside his convictions because: (1) he alleges that he received ineffective assistance of counsel when his counsel failed to interview and secure the presence of an alibi witness for the trial; (2) his counsel failed to properly assist him in submitting clemency matters; and (3) the military judge erred in not providing appellant a continuance to secure production of the alibi witness.

We address these issues *seriatim.*

### DISCUSSION

### I

 For counsel to be found ineffective at trial, two questions must be answered: (1) whether counsel was reasonably competent, and (2) if not, whether the accused was prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see United States v. Scott,* 24 MJ 186, 188 (CMA 1987). A conclusion that prejudice occurred is measured by whether counsel's performance was so deficient that the trial is unreliable and the result unjust. 466 U.S. at 686, 104 S.Ct. 2052. Counsel is strongly presumed to be competent unless an appellant can rebut this presumption and show otherwise. *Id.* at 689, 104 S.Ct. 2052. To accomplish this, an appellant must point out specific errors made by his defense counsel that were unreasonable "under prevailing professional norms." *Id.*

 In this case, appellant alleges that his counsel's failure to track down an "alibi" witness constituted ineffective assistance of counsel. At trial, appellant defended against one of the carnal knowledge specifications by asserting that he was not in the specified barracks room on the date charged and at the times alleged. Appellant told his counsel that Seaman Belton, who was a friend of appellant's from the barracks, would corroborate appellant's testimony that he was not present in the specified barracks room with the victim on one of the relevant dates. Counsel attempted to repeatedly phone this witness in an attempt to interview him, but to no avail.

We first examine whether counsel's actions were deficient in that he failed to pursue this witness. Defense counsel must perform a reasonable investigation, or make a reasonable decision that an avenue of investigation is unnecessary. *Scott,* 24 MJ at 188. In *United States v. Wean,* and in *Scott,* we held that not pursuing the existence of a potential alibi witness is deficient performance. 45 MJ 461, 466, 473–77 (1997); 24 MJ at 193.

In *Scott,* civilian defense counsel had not initiated investigation to support the accused's alibi that he was shopping at various local stores for birthday presents for his wife while the crime Scott was charged with—the abduction and rape of a co-worker's wife—was taking place. The victim-wife had equivocally identified the assailant as being Scott. She chose him from a photo line-up in what was a cross-racial identification, initially made under stressful conditions, and at night. 24 MJ at 193. We held that, under these circumstances, failure to pursue the alibi defense cast doubt on the reliability of the "adversarial testing process of the trial." *Id.*

---

3. The granted issues are:
 I. WHETHER THE LOWER COURT ERRED IN FINDING THAT APPELLANT WAS NOT DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL DEFENSE COUNSEL WAS DEFICIENT IN FAILING TO TAKE ALL NECESSARY STEPS TO OBTAIN AN INTERVIEW WITH A KEY ALIBI WITNESS AND TO ENSURE HIS PRESENCE AT TRIAL.
 II. WHETHER THE LOWER COURT ERRED IN FINDING THAT APPELLANT WAS NOT DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN THE POST–TRIAL REVIEW OF HIS CASE WHERE TRIAL DEFENSE COUNSEL FAILED TO ASSIST APPELLANT IN PREPARING AND SUBMITTING CLEMENCY MATTERS.
 III. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION IN DENYING APPELLANT'S MOTION FOR A CONTINUANCE IN ORDER TO SECURE THE PRESENCE OF A KEY ALIBI WITNESS.

In *Wean*, the accused was charged with and convicted of committing various indecent acts with children under the age of 16. In that case, civilian defense counsel failed to call rebuttal child sexual abuse experts, failed to challenge proposed theories based on controversial "play therapy," and failed to interview and consider presenting the testimony of an "alibi" witness who was present in the accused's home daily for extended periods of time. 45 MJ at 464. Wean's wife provided the civilian defense counsel with a list of potential witnesses, including Mrs. Wean's next door neighbor, Mrs. Price, who was present in the Wean home every day for up to 12 hours. Mrs. Price had her own newborn baby and would visit and sometimes assist the accused's wife in her home-based daycare operation.

The charges in *Wean* were partially substantiated by suggestive identification methods and the accused's access to these children in his home. Mrs. Price would have testified that the accused did not have sufficient opportunity to be alone with the children while they were at his home. We held that failure to pursue this witness, in addition to the cumulative effect of other deficiencies by civilian defense counsel in this case, led to an unreliable result. *Id.*

Prejudice was apparent in both of these cases because of the specific weaknesses in each case. Thus, we reversed based upon the prejudice caused by failure to introduce this evidence to contradict the government weaknesses in each of these cases.

In the case at hand, we once again apply the two-part test of *Strickland* to determine whether counsel was ineffective, and if so, whether counsel's deficiencies resulted in prejudicial error requiring reversal. 466 U.S. at 687, 104 S.Ct. 2052. This case, however, is distinguishable from both *Scott* and *Wean*. In the case *sub judice*, we need not address the first prong of the *Strickland* test, because here there was no discernible prejudice.

Defense counsel was notified by his client that Seaman Belton, a friend and barracks mate of appellant, would testify that appellant did not know the complainant in this case at the time that two of the three offenses allegedly occurred, and he was never alone with the complainant in Seaman Belton's barracks room, as she had alleged. During the pretrial preparations in this case, defense counsel attempted to contact Seaman Belton on many occasions, but to no avail. However, he never enlisted the aid of the command to order Seaman Belton to come to his office, nor did he include Seaman Belton's name on the list of witnesses submitted to trial counsel for production at the court-martial.

It is apparent here that counsel exercised some effort to locate Seaman Belton in this case, but counsel was unable to locate this witness. In fact, the *DuBay* judge opined that this witness most likely did not want to be found. It is thus unclear and unnecessary to determine whether the first prong of *Strickland* has been met. It is the second part of the *Strickland* test requiring prejudice in which appellant's claim lacks. Seaman Belton was called as a witness at the *DuBay* hearing that had been ordered by the lower court. At this hearing, Seaman Belton testified partially consistently with the way that appellant suggested he might testify, but then also contradicted appellant's version of events in several instances. For example, Seaman Belton testified that on one of the nights in question, appellant was not alone with the complainant in his barracks room. This testimony provides some support for appellant's version of events. On the other hand, Seaman Belton contradicted appellant's claim about when he first met the complainant. Belton placed the date approximately 10 days earlier than appellant claimed. This testimony would have severely undermined appellant's credibility and case.

Moreover, the military judge at the *DuBay* hearing found that Seaman Belton had "credibility problems" of his own. In his findings of fact, the military judge mentioned that Seaman Belton testified the victim and her friend came by his barracks room looking for appellant. Seaman Belton also stated that he had never met the victim prior to this date. When questioned by the military judge as to how the victim would have known

where Seaman Belton's room was, Belton responded that he had "no idea."

The military judge found that Belton's testimony in this regard was "unbelievable." Especially noteworthy is the fact that there was testimony given by the victim's friend at trial that she had engaged in sexual relations with Belton on the same evening that the victim and appellant were also engaged in intercourse on the other side of the same room. Even Belton corroborated that he had had intercourse with the victim's friend on the evening of December 27, 1992. He merely denied that anyone else was in his barracks room at the time.

These credibility problems caused the Court of Criminal Appeals to conclude that Seaman Belton's testimony would not have provided much assistance to appellant.

We accept the factual findings of the *DuBay* military judge unless clearly erroneous. Here, there is no reason to second-guess the credibility determinations of the *DuBay* military judge. The record clearly supports his findings and conclusions. Moreover, we agree with the legal analysis made by the court below.

Clearly, under these circumstances, there was no prejudice in not calling Belton as a witness at trial.

## II

We next turn to whether the military judge abused his discretion in not granting the defense request for a continuance to allow for the production of Seaman Belton.

At trial, in a motion for continuance made to the military judge, defense counsel represented that this witness would corroborate appellant's position that he was not alone with the victim in the barracks room on the alleged dates. Defense counsel requested the continuance in order to secure this witness's presence at trial, asserting that the witness had been allowed to go on leave and could be relevant to appellant's defense. Upon further questioning by the military judge about the particulars of what this witness would say, defense counsel admitted that he had not yet had the opportunity to

speak personally with this proposed witness. Defense counsel also admitted he had not included this witness's name on his formal request to produce witnesses because the Government had originally intended to call this witness. The Government notified defense counsel before trial that it had decided not to call this witness, even though there is no legal requirement to do so.

The military judge denied the request for a continuance, but left counsel the opportunity to reopen his request if he could provide further information about this witness's necessity after counsel took the opportunity to contact and interview the witness. Counsel never located the witness, and thus, did not renew his request for a continuance.

■ A judge's decision to deny a continuance is reviewed for an abuse of discretion. *United States v. Weisbeck*, 50 MJ 461, 464 (1999).

■ Even if the military judge erred in not allowing defense counsel a greater window of opportunity to locate this witness for an interview, which we do not decide here, there is no prejudice to appellant for the reasons articulated in Part I of this opinion.

## III

■ Finally, we address whether defense counsel was ineffective in failing to assist appellant in submitting clemency matters under RCM 1105, Manual for Courts–Martial, United States (1994 ed.). We hold that counsel was not ineffective under the specific factual circumstances of this case, but note that the actions of this defense counsel are far from a model of advocacy.

According to defense counsel, appellant informed him after trial that he wanted to submit clemency matters. In this conversation, appellant indicated that he did not wish defense counsel to submit the matters, but would do so himself. However, sometime during this process, defense counsel failed to notify appellant that he had received the staff judge advocate (SJA)'s recommendation

and that the 10–day clock for submitting clemency matters had begun ticking.

Evidently, at some time during this lack of communication, appellant or the SJA had sent a copy of appellant's intended submission to the defense counsel. Upon receiving appellant's proposed submission, defense counsel had several choices. First, he could have worked with this document to rewrite a suggested clemency petition for appellant's review, and with appellant's approval, eventually could have submitted this document. Second, after speaking with appellant, defense counsel could have forwarded appellant's document to the convening authority with a cover letter. Or, finally, defense counsel could have secured a signature from appellant that released defense counsel from representation and forwarded a copy of the SJA's recommendation to appellant for his use in drafting the petition, or having another attorney assist him with this.

Instead, defense counsel merely returned the matters to appellant with a cover letter indicating that the submission was improperly styled and that appellant would not receive clemency anyway. Defense counsel based this last opinion on a telephone conversation that he had had with the SJA. Despite the likely denial of clemency here, defense counsel was not free to ignore his duties without his client releasing him from representation.

Many times, defense counsel are called upon to represent clients with whom they have a personality conflict. That seems to be what occurred here. In these cases, there are two choices: (1) try to resolve the conflict and press forward with full and zealous representation, or (2) seek relief from the obligation to represent the client. Here, the miscommunication between defense counsel and his client was more than unfortunate, it also resulted in no communication with the convening authority on appellant's behalf by way of a clemency submission.

However, although defense counsel did not fully discharge his obligations here, appellant cannot demonstrate how he was prejudiced. In *United States v. Wheelus*, we noted that there were those cases where, although there is an error in the post-trial proceedings, the appellant has not been prejudiced. 49 MJ 283, 289 (1998). In *Wheelus*, we also stated that Courts of Criminal Appeals should preferably analyze any prejudice and articulate reasons supporting a rationale for finding no prejudice. *Id.* Here, this advice was aptly applied to evaluate any prejudice in appellant's case.

The Court of Criminal Appeals analyzed appellant's claim that his counsel was ineffective by not submitting clemency matters and found that it was not necessarily convinced there was deficient performance, but if so, then there was no prejudice. Unpub op. at 6. The Court of Criminal Appeals clearly stated that the SJA's recommendation "did a good job of summarizing the nature of the offenses and the occasionally credible performance of this offender." *Id.* Additionally, the court relied upon the fact that defense counsel contacted the SJA and ascertained there was no chance of clemency in appellant's case. The court below opined that the SJA's response was not surprising "because of the serious nature of the offenses, the appellant's refusal to plead guilty to any of the offenses, and his poor-to-mediocre military record, which contained two non-judicial punishments." *Id.*

We note that these reasons alone do not support a failure to submit clemency. The court below merely considered them as part of its no-prejudice analysis. While we adopt the same no-prejudice analysis, reliance on an SJA's opinion about the likelihood for clemency in a particular case, or relying upon the accused's right to plead not guilty, are never sufficient reasons to forgo a clemency submission.

Moreover, the court below further supported its rationale by stating that appellant's clemency package, even if he had submitted it, would not have been beneficial to his cause. It stated that appellant was more likely to have been granted clemency in the absence of his proposed petition. After reviewing the entire record and appellant's record, it is clear that the Court of Criminal

Appeals did not abuse its discretion in making this finding.[4] The detailed rationale given by the Court of Criminal Appeals here clearly supports our finding of no prejudice.

4. The Court of Criminal Appeals included a footnote in its opinion illustrating why appellant's submission could have been detrimental. It stated:

> We are also completely confident that the appellant [sic] clemency package, which he alleges the convening authority never saw because the trial defense counsel failed to advise him of the deadline for submitting it, would have not helped him at all. After a series of denials and attributions of bad faith on the part of just about everyone involved with the court-martial, the appellant explained his prior adverse disciplinary record as follows:

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

> I know my past record of NJP Article 15's UA indicates only isolated or minor offenses but for every story there is two-sides [sic] to a story an [sic] I appealed an [sic] no justice was done for me to explain mine fairly based on Petty Officers with rank is always advantage an [sic] they are always right in the Higher Navy Chain of commands [sic] eyes.

Letter from appellant to Commanding Officer of 2 June 1993. In our experience, the appellant was more likely to receive clemency without the SJA and convening authority having considered that particular document.

Unpub. op. at 6–7 n. 3.