*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Salvador JACINTO,
## Aviation Structural Mechanic First Class Petty Officer
United States Navy, Appellant

### No. 20-0359
Crim. App. No. 201800325

Argued May 26, 2021—Decided July 15, 2021

Military Judge: Roger E. Mattioli

For Appellant: *Lieutenant Michael W. Wester*, JAGC, USN (argued).

For Appellee: *Major Clayton L. Wiggins*, USMC (argued); *Lieutenant Colonel Nicholas L. Gannon*, USMC, *Major Kerry E. Friedewald*, USMC, and *Brian K. Keller*, Esq. (on brief).

Amicus Curiae for Appellee: *Peter Coote*, Esq. (on brief) (on behalf of Protect Our Defenders).

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY and Judge SPARKS, Judge MAGGS, and Judge HARDY, joined.

————————

Judge OHLSON delivered the opinion of the Court.

A panel with enlisted representation sitting as a general court-martial convicted Appellant, contrary to his pleas, of two specifications of rape of a child, three specifications of sexual abuse of a child, and two specifications of child endangerment by culpable negligence, in violation of Articles 120b and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 934 (2012). The panel sentenced Appellant to a bad-conduct discharge and confinement for eight years. The convening authority approved the sentence but granted Appellant three days of confinement credit. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence. *United States v. Jacinto*, 79 M.J. 870, 891 (N-M. Ct. Crim. App. 2020).

We granted review to determine whether the military judge abused his discretion in denying the defense motions for a continuance and for in camera review of mental health records.[1] Because further development of the record is necessary to resolve the granted issues, we set aside the lower court's decision in part and remand for proceedings consistent with this opinion.

## I. Background

Appellant was convicted in relevant part of raping and sexually abusing his minor stepdaughter, E.B. The allegations of abuse first came to light in a video call between E.B. and her mother in March 2013. E.B. told her mother during a tearful call that Appellant "had humped her from behind" in her mother's bedroom, but E.B. did not further elaborate. A few days later, E.B.'s mother again asked her to describe what happened. E.B. told her mother that while she was lying on her mother's bed, Appellant "came up behind her and humped her." However, E.B. recanted her allegations shortly thereafter.

In May 2017, E.B. renewed her abuse allegations to her mother and a school counselor. She also made additional allegations, telling the counselor that Appellant "reached into her pants and touched her vagina" and that Appellant's "fingers went inside her vagina on another occasion." Soon after

---

[1] The two granted issues state:

> I. A military judge may grant a continuance for reasonable cause as often as may appear just. Did the military judge abuse his discretion by denying Appellant's first continuance request after the Government disclosed only days before trial the complaining witness likely suffered from a psychotic condition?

> II. The Fifth and Sixth Amendments guarantee an accused the right to a meaningful opportunity to present a complete defense. Did the military judge abuse his discretion by denying the defense motion for in camera review of the complaining witness's mental health records?

*United States v. Jacinto*, 81 M.J. 57 (C.A.A.F. 2021) (order granting review).

making the May 2017 abuse allegations, E.B. was hospitalized for in-patient mental health treatment.

Throughout the pretrial proceedings, the defense sought E.B.'s May 2017 mental health records from the hospital. On June 8, 2018, the military judge ordered the hospital to produce E.B.'s prescription records and mental health diagnoses. The hospital then disclosed at least seventeen pages of records the week before the start of the June 18, 2018, trial.[2] These records indicated that E.B. was prescribed five medications, including Thorazine for "psychotic agitation." However, the hospital records also indicated that E.B. was diagnosed with major depressive disorder *without* psychotic features, as well as post-traumatic stress disorder (PTSD). The defense first learned about this information on the evening of Wednesday, June 13, 2018, less than five full days before the start of trial on the morning of Monday, June 18, 2018.

The next morning, a defense forensic psychologist provided testimony about the hospital records at an Article 39(a), UCMJ,[3] session. The military judge stated that these records were marked as Appellate Exhibit LXXI. However, no hospital records are included in this appellate exhibit.[4] Instead, some, but not all, of the documents reviewed by the defense expert are included in other portions of the record. Specifically, five pages of E.B.'s medical records that were reviewed

---

[2] The hospital sent more medical records, but this response was eventually narrowed to seventeen pages of which only twelve are included in the record of trial. The trial counsel reviewed at least three pages before securing the records and providing them to the military judge. It is not clear from the record before us how many other pages were provided by the hospital because after the military judge received these medical records from trial counsel, the military judge did not maintain them for the record of trial. He instead returned the records to the victim's legal counsel "to do with as she and her client [saw] fit."

[3] 10 U.S.C. § 839(a) (2012).

[4] Appellate Exhibit LXXI is two pages and contains the military judge's June 8, 2018, order directing the hospital to produce certain mental health information about E.B.

by the defense expert are completely missing from the record of trial.[5]

Based on her review of the hospital records, the defense forensic psychologist testified that:

- E.B. had been prescribed "a cocktail" of medications, including Thorazine, which was to be taken "by mouth every six hours" with the rationale listed "as psychotic agitation."

- Psychotic agitation is a "thought disorder" that affects a person's ability "to perceive [her] environment accurately" by causing the person "not [to] respond[] to the environment as it exists, but as [she is] perceiving it."

- Thorazine is "a very serious antipsychotic neuroleptic medication; it's an older, dirtier drug . . . with so many side effects" that is normally used "to reduce psychosis."

- The Thorazine prescription was "probably trying to lower agitation," and E.B. was "very likely" experiencing psychotic agitation several days before the hospitalization.

- E.B. was not prescribed the "lowest dosage of Thorazine," and the expert was "concerned" with the dosage prescribed, particularly because of the frequency with which it was to be administered.

- The discharge paperwork suggested that the hospital was "recommending" a drug "cocktail," which included Thorazine, "with the expectation that the medication [would] be continued" following discharge.

At various points in her testimony, however, the forensic psychologist also stated that a review of additional hospital records would "clarify" the matter and further inform her professional opinion. She indicated that "a complete record and not pieces of a record" would answer the "question as to why there is an incongruity between the diagnostic coding here [(major depressive disorder without psychotic features)] and . . . the medication specifically outlining psychotic agitation as the reason for its use."

---

[5] At oral argument, appellate government counsel explained that twelve of seventeen pages are part of the record.

Following this expert testimony, the defense sought two forms of relief: (1) a continuance to investigate this "late-breaking disclosure"—this "bombshell . . . on the eve of trial"—about Thorazine and psychotic agitation; and (2) in camera review by the military judge of the hospital records to determine whether they contain constitutionally required information.[6] The military judge denied the continuance motion and the defense motion for reconsideration of this continuance ruling.

Before ruling on the motion for in camera review, the military judge issued two orders on June 14, 2018. First, he agreed with the Government that it "would be helpful" to contact the hospital for clarification about E.B.'s medication and therefore ordered the Government to "see if [it] can get someone to decipher what the records mean, without getting into . . . any specific mental health statements or anything that would be covered by [the Military Rule of Evidence (M.R.E.)] 513" psychotherapist-patient privilege. Second, the military judge ordered the hospital to produce (1) records indicating the dates and times when E.B. was administered Thorazine (and other medications) during her May 2017 hospitalization, and (2) records identifying the medications and dosages prescribed upon discharge from the hospital. However, this court-ordered information is not included in the record of trial. In fact, the record does not reflect whether the Government ever contacted the hospital, and if so, whether the hospital provided records that were responsive to the military judge's order.

Three days after issuing these orders, the military judge denied the defense request for in camera review of E.B.'s mental health records. In this ruling, the military judge made the following findings of fact:

- During E.B.'s May 2017 inpatient hospital admission, medical providers "ordered various prescriptions for E.B.," including Thorazine.

---

[6] Trial defense counsel explained that the question of whether E.B. was experiencing psychotic agitation at the time of her May 2017 accusation "goes to the heart of [her] credibility, memory, and ability to accurately perceive events."

- Thorazine, a "powerful antipsychotic medication," was prescribed "as needed" "to address 'psychotic agitation'" but was "never administered to E.B." at the hospital.

- E.B. was diagnosed at the hospital "with PTSD and Major Depressive Disorder without psychotic features."

- "There is no evidence that E.B. ever experienced psychotic agitation."

- "There is no evidence the prescription for Thorazine was ever filled" or "E.B. ever took Thorazine."

Relying on these findings, the military judge determined that the defense did not make "a specific enough showing" for him to conduct an in camera review of privileged mental health records.[7] The military judge did not identify the documentary or other evidence that he relied upon when making these factual findings. Moreover, there is nothing in the record before us that demonstrates how the military judge went from declaring "I've got paperwork here . . . and witness testimony that says [E.B.] was prescribed something for psychotic agitation"[8] on one day, to finding that there was "*no* evidence that E.B. ever experienced psychotic agitation"[9] several days later. (Emphasis added.)

## II. Standard of Review and Applicable Law

We review a military judge's decision to deny a motion for a continuance, or to deny a motion for in camera review of records, for an abuse of discretion. *United States v. Chisum*, 77 M.J. 176, 179 (C.A.A.F. 2018) (in camera review); *United States v. Brownfield*, 52 M.J. 40, 44 (C.A.A.F. 1999) (continuance). As part of this review, we examine the military judge's findings of fact for clear error. *United States v. Ayala*, 81 M.J. 25, 27–28 (C.A.A.F. 2021). The military judge clearly

---

[7] The lower court determined that the military judge applied the wrong legal standard in denying the motion for in camera review, but the court agreed that the defense did not establish a specific factual basis for in camera review. *Jacinto*, 79 M.J. at 880–81.

[8] Joint Appendix at 638, *United States v. Jacinto*, No. 20-0359 (Mar. 13, 2021).

[9] *Id.* at 821.

errs "when there is no evidence to support the finding, or . . . although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Garcia*, 80 M.J. 379, 385 (C.A.A.F. 2020) (citation omitted) (internal quotation marks omitted).

Under Article 40, UCMJ, a military judge "for reasonable cause" may "grant a continuance to any party for such time, and as often, as may appear to be just." 10 U.S.C. § 840 (2012). When ruling on a continuance motion, the military judge may consider a variety of factors. *See United States v. Watkins*, 80 M.J. 253, 259 (C.A.A.F. 2020); Rule for Courts-Martial (R.C.M.) 906(b)(1) Discussion. However, a military judge's "'unreasonable and arbitrary insistence upon expeditiousness in the face of [a] justifiable request for delay' is an abuse of discretion." *United States v. Weisbeck*, 50 M.J. 461, 466 (C.A.A.F. 1999) (alteration in original removed) (quoting *United States v. Soldevila–Lopez*, 17 F.3d 480, 487 (1st Cir.1994)).

Military Rule of Evidence (M.R.E.) 513 contains the military's psychotherapist-patient privilege. This rule provides specific procedures when "the production or admission of records or communications of a patient other than the accused is a matter in dispute." M.R.E. 513(e)(1). Among these procedures, the rule allows the "military judge [to] examine the evidence or a proffer thereof in camera, if such examination is necessary to rule on the production or admissibility of protected records or communications." M.R.E. 513(e)(3).[10]

When a military judge abuses his discretion denying a continuance or denying in camera review, the reviewing court will not grant relief unless the appellant suffers prejudice. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012); *see also Chisum*, 77 M.J. at 179 (in camera review); *United States v. Wellington*, 58 M.J. 420, 425 (C.A.A.F. 2003) (continuance).

---

[10] For purposes of this opinion, we do not decide whether there is a constitutionally required exception to the M.R.E. 513 psychotherapist-patient privilege. Our focus is solely on whether the defense established a factual basis for its continuance and in camera review motions.

### III. Discussion

The record before us contains conflicting information about whether E.B. was experiencing psychotic agitation when she was hospitalized shortly after her May 2017 outcry against Appellant. On the one hand, the record indicates that E.B. was diagnosed with PTSD and major depressive disorder *without* psychotic features. On the other hand, the medical records indicate that E.B. was prescribed Thorazine for psychotic agitation. Because of this conflicting evidence, there is a crucial dispute between the parties about whether the medical records indicate that E.B.'s physician diagnosed E.B. with psychotic agitation and authorized attending medical personnel to administer Thorazine *when* needed, *or* that E.B.'s physician was merely indicating in the charts that medical personnel were authorized to administer Thorazine *if* needed in the event E.B. subsequently displayed symptoms of psychotic agitation.

The military judge essentially sided with the Government in this dispute when denying the defense motions for a continuance and in camera review. Specifically, he made two key findings of fact: (1) Although the hospital prescribed Thorazine as needed for psychotic agitation, "[t]here is no evidence that E.B. ever experienced psychotic agitation"; and (2) "There is no evidence [that] the prescription for Thorazine was ever filled" or that "E.B. ever took Thorazine," and, in fact, Thorazine was "never administered to E.B." To properly assess the military judge's continuance and in camera rulings, we must determine whether these two factual findings are clearly erroneous. *See Ayala*, 81 M.J. at 27–28. However, we cannot evaluate the military judge's critical factual findings because of obvious omissions and ambiguities in the record.[11]

First, this record omits five pages of hospital documents reviewed by the defense forensic psychologist (and presumably by the military judge) when she testified at the Article

---

[11] In light of our decision to remand for further fact-finding, we need not resolve at this time whether the military judge's finding that that there is "no evidence" is clearly erroneous when the record does indeed contain at least "some" evidence.

39(a), UCMJ, session. This missing evidence may be important to the disposition of this case because the defense forensic psychologist's assessment of the hospital records directly contradicts the military judge's assessment of—and factual findings regarding—these same records. Without this evidence, our ability to assess the military judge's factual findings is significantly and substantively impeded.

Second, the record omits information that the military judge ordered the Government and the hospital to produce on June 14, 2018. Indeed, as previously noted, there is no indication whether the Government and the hospital even complied with the military judge's orders. However, this court-ordered information—if produced—likely would have resolved the questions surrounding E.B.'s diagnosis and her Thorazine prescription for psychotic agitation.

Because the record before us is unclear and incomplete, we cannot make an informed decision about whether the military judge's crucial factual findings are clearly erroneous. Accordingly, we vacate the decision of the lower court in part and remand for further factual development of the record. The lower court—either on its own or by way of *DuBay*[12] proceedings—shall obtain the missing record evidence and any other evidence (such as affidavits from medical providers) relevant to whether E.B. was diagnosed with psychotic agitation in May 2017. To be clear, only the records as they existed at the time of the court-martial are to be produced because those are the only records relevant for determining if the military judge abused his discretion.[13] The lower court or *DuBay* military judge should specifically identify the five missing pages reviewed by the defense forensic psychologist, any remainder of the earlier hospital records produced in response to the June 8, 2018, order, and any documents that were produced or should have been produced pursuant to the military judge's June 14, 2018, orders. The fact-finder also may enter any other findings of fact necessary to resolve the granted appellate issues. M.R.E. 513 and other privileges will apply and the

---

[12] *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

[13] Because of the standard of review, any medical or psychiatric records that were generated after the entry of judgment are not relevant for appellate review of these granted issues.

appropriate authority—i.e., either the lower court or a *DuBay* military judge—shall conduct an in camera review, issue appropriate protective orders, and place portions of the record under seal as required. *See* R.C.M. 701(g); R.C.M. 1113. Once the record is fully developed on the psychotic agitation issue, the lower court shall reexamine the military judge's continuance and in camera review rulings. If the lower court determines that the military judge abused his discretion in denying Appellant's motion for a continuance or in denying Appellant's motion for in camera review, then the lower court also shall determine whether the denial of either motion materially prejudiced Appellant. This inquiry may require the lower court to make (or order a *DuBay* military judge to make) further findings of fact about whether there was discoverable and admissible information that would have helped Appellant's defense. Following these proceedings, Article 67, UCMJ, 10 U.S.C. § 867 (2012), shall apply.

## IV. Judgment

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside as to Specifications 2, 3, 4, and 5 of Charge I and Specification 1 of Charge II, and is also set aside as to the sentence. The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed as to Specification 1 of Charge I and Specification 2 of Charge II. The record is returned to the Judge Advocate General of the Navy for remand to the lower court for further review.