# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40220**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Mark A. PETERSON**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 23 February 2023

———————————

*Military Judge:* Thomas A. Smith.

*Sentence:* Sentence adjudged on 4 October 2021 by GCM convened at Holloman Air Force Base, New Mexico. Sentence entered by military judge on 1 November 2021: Dishonorable discharge, confinement for 6 days, and reduction to E-1.

*For Appellant:* Major Kasey W. Hawkins, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Major John P. Patera, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and GRUEN *Appellate Military Judges*.

Judge GRUEN delivered the opinion of the court, in which Senior Judge Key and Judge ANNEXSTAD joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

GRUEN, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas, of one specification of conspiracy to obstruct justice;

three specifications of wrongful use of methamphetamine and fentanyl; and two specifications of obstruction of justice in violation of Articles 81, 112a, and 131b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 912a, 931b.[1,2] The military judge sentenced Appellant to a dishonorable discharge, confinement for six days, and reduction to the grade of E-1. The convening authority took no action on the findings or sentence.

Appellant has raised two issues on appeal: whether his trial defense counsel were ineffective and whether his sentence is inappropriately severe. We find trial defense counsel were not ineffective, Appellant's sentence is not inappropriately severe, and no error materially prejudiced a substantial right of Appellant. We affirm the findings and sentence.

## I. BACKGROUND

Appellant enlisted in the United States Air Force as an engineering specialist on 12 January 2002. Appellant deployed multiple times and served at overseas locations, during which he was exposed to enemy fire that led to mental and physical injuries, to include Post Traumatic Stress Disorder and traumatic brain injury—these injuries were not diagnosed until years later. Depression and suicidal ideations became a part of Appellant's mental health struggles years after the deployments. At some point, Appellant began to self-medicate. In doing so, he purchased what he believed to be OxyContin[3] pills from someone other than an authorized medical provider sometime between 8 and 22 July 2020.

Pursuant to a unit-wide urinalysis, Appellant provided a urine sample on 22 July 2020, which returned positive results for methamphetamine, fentanyl, and norfentanyl—a fentanyl metabolite. Between 27 July and 10 August 2020, Appellant purchased what he again believed to be OxyContin from the same unauthorized seller. On 10 August 2020, he was ordered to provide another

---

[1] All references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Pursuant to the plea agreement and discussed later in this opinion, the convening authority agreed to withdraw and dismiss other charges and specifications.

[3] OxyContin is a name brand prescription for oxycodone, which is a Schedule II controlled substance. *See* DEPARTMENT OF JUSTICE/DRUG ENFORCEMENT ADMINISTRATION DRUG FACT SHEET: OXYCODONE, https://www.dea.gov/sites/default/files/2020-06/Oxycodone-2020_0.pdf (last visited 13 Feb. 2023).

urine sample pursuant to the *Bickel* policy[4] in place at the time, and he again returned positive results for fentanyl. Appellant believed the positive results were due to the pills he thought to be OxyContin which were laced with methamphetamine and fentanyl.

One charge and three specifications of wrongful use of methamphetamine and fentanyl[5] in violation of Article 112a, UCMJ, were preferred against Appellant in October 2020. Those charges were referred to trial by special court-martial which was scheduled to begin on 19 January 2021. On 4 January 2021, while awaiting trial, Appellant received medical treatment at a local off-base hospital Appellant was administered fentanyl as part of his treatment, which apparently planted the idea for his subsequent obstruction-related offenses in violation of Article 131b, UCMJ. Appellant decided to alter his medical records so it would appear that he was lawfully administered fentanyl *before* giving his urine sample that was the subject of his special court-martial. In effect, this created a legal defense for having the drug in his system. At the hospital. Appellant had signed a medical release form which allowed his mother to receive his medical records. Appellant asked his mother to obtain his medical records and bring them to him. Appellant then altered the medical record dates using software on his personal computer. He asked his mother to provide the altered medical records to his defense counsel. Aware of Appellant's scheme, she did so.

Appellant's plan worked, at least for the short term, as the Government withdrew and dismissed the two fentanyl specifications upon notice of these records by trial defense counsel. As scheduled, court-martial proceedings began on 19 January 2021 for the only remaining specification—wrongful use of methamphetamine. While motions were being litigated, the military Medical Review Officer (MRO) coordinated with the off-base hospital from which the records in issue were obtained by Appellant's mother and altered by Appellant. The MRO was concerned that this off-base hospital did not provide the military complete records of Appellant's visit—specifically the MRO determined that the military did not have records for the dates associated with the records in issue, meaning the military had no record of Appellant being prescribed fentanyl during the date range that caused the Government to dismiss the fentanyl specifications. Upon further review and consultation with the off-base hospital, the MRO discovered that the documents in issue did not exist in the official

---

[4] For the legitimate purpose of safeguarding a unit's health and readiness, a *Bickel* policy is a command policy of retesting military members who tested positive for illegal drug use. *See generally United States v. Bickel*, 30 M.J. 277 (C.M.A. 1990).

[5] Two of the specifications were for wrongful use of fentanyl during two different time periods.

military medical records system or the off-base hospital's records system. As such, the MRO deduced that the records were false. Upon this revelation, trial counsel and trial defense counsel requested a continuance of court-martial proceedings, which the military judge granted. During the continuance, the special court-martial convening authority withdrew and dismissed without prejudice all charges and specifications while an investigation into the falsified documents ensued. During the investigation, agents from the Air Force Office of Special Investigations discovered that Appellant had attempted to destroy evidence—specifically, the computer he used to alter the medical records.

On 13 May 2021, charges against Appellant were referred to a general court-martial alleging: unlawful absence from duty (Charge I); violations of a lawful general regulation and order (Charge II); making a false official statement (Charge III); unlawful use of drugs (Charge IV); obstruction of justice (Charge V); and conspiracy to obstruct justice (Charge VI).[6] Appellant was placed in pretrial confinement from 6 to 9 August 2021 and again on 16 and 17 August 2021.

Appellant entered into a plea agreement whereby the convening authority agreed to withdraw and dismiss Charges I, II, and III and their specifications in exchange for Appellant's guilty pleas to the remaining charges. Further, upon accepting the guilty pleas, the military judge was required to adjudge a dishonorable discharge. There were two additional limitations concerning permissible punishments: (1) any adjudged confinement had to run concurrently; and (2) the total of all confinement could not exceed "the number of days of credited pretrial confinement time."[7] The maximum imposable punishment based solely on Appellant's pleas included, *inter alia*, a dishonorable discharge, 30 years' confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1.

## II. DISCUSSION

### A. Allegations of Ineffective Assistance of Counsel

#### 1. Additional Background

Appellant asserts his trial defense counsel were ineffective because they failed to request a sanity board; they failed to adequately investigate evidence of his combat-related injuries and mental health issues for use in plea negotiations and as evidence in mitigation; and they advised him to enter into a plea

---

[6] Appellant was represented by new counsel at his trial. All further references in this opinion to trial defense counsel are to Appellant's new counsel.

[7] Credited pretrial confinement time was calculated to six days.

agreement with a mandatory dishonorable discharge. Based on Appellant's allegations and considering his affidavit to this court, trial defense counsel submitted individual declarations per order of this court, which we have considered in addressing Appellant's claims. *See United States v. Jessie*, 79 M.J. 437, 442 (C.A.A.F. 2020).

**2. Law**

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). "[O]ur scrutiny of a trial defense counsel's performance is 'highly deferential,' and we make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate conduct from counsel's perspective at the time.'" *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (omission in original) (quoting *Strickland*, 466 U.S. at 689). The burden is on the appellant to identify specific unreasonable errors made by his or her defense counsel. *United States v. Brownfield*, 52 M.J. 40, 42 (C.A.A.F. 1999) (citing *Strickland*, 466 U.S. at 689).

We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *Mazza*, 67 M.J. at 475 (citation omitted). "Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (first citing *Gooch*, 69 M.J. at 362–63; and then citing *United States v. Stephenson,* 33 M.J. 79, 80 (C.M.A. 1991)). The burden is on the appellant to demonstrate both deficient performance and prejudice. *Id.* (citation omitted).

We consider the following questions to determine whether the presumption of competence has been overcome: (1) is there a reasonable explanation for counsel's actions; (2) did defense counsel's level of advocacy fall measurably below the performance ordinarily expected of fallible lawyers; and (3) if defense counsel were ineffective, is there a reasonable probability that, absent the errors, there would have been a different result. *See Gooch*, 69 M.J. at 362 (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)); *see also Akbar*, 74 M.J. at 386 (applying same standard for evaluating defense counsel's performance during sentencing proceedings); *United States v. Journigan,* No. ACM S32716, 2022 CCA LEXIS 686, at *12–14 (A.F. Ct. Crim. App. 28 Nov. 2022)

(unpub. op.) (finding trial defense counsel were not ineffective for failing to present specific evidence in mitigation and extenuation during sentencing). Considering the last question, "[i]t is not enough to show that the errors had some conceivable effect on the outcome;" instead, it must be a "probability sufficient to undermine confidence in the outcome," including "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Datavs*, 71 M.J. at 424 (citations omitted).

It is only in those limited circumstances where a purported "strategic" or "deliberate" decision is unreasonable or based on inadequate investigation that it can provide the foundation for a finding of ineffective assistance. *See United States v. Davis*, 60 M.J. 469, 474 (C.A.A.F. 2005).

We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes between Appellant's assertions and his trial defense counsel's assertions. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411, 413 (C.M.A. 1967). We find a hearing unnecessary to resolve Appellant's claims.

### 3. Analysis

#### a. Decision Not to Request a Sanity Board

Appellant's first point of contention is that his trial defense counsel failed to request a sanity board to determine if he had the requisite mental capacity to stand trial. In his affidavit, Appellant summarized his combat-related injuries, mental health challenges, and claimed that despite his trial defense counsel having knowledge of such things, they "never discussed a sanity board with [him] and didn't request one from the convening authority or the court." Turning to the first prong of whether the presumption of competence has been overcome—whether there is a reasonable explanation for counsel's actions—we find trial defense counsel's actions reasonable.

Trial defense counsel stated they had no reason to believe Appellant "'lacked mental responsibility for any offense charged or lack[ed] capacity to stand trial,' as required by R.C.M. 706(a)." (Alteration in original). Counsel believed Appellant was able to appreciate the nature and quality or wrongfulness of his conduct, understand the nature of the proceedings against him, and cooperate intelligently in his defense. *See* R.C.M. 706(c)(2). Trial defense counsel stated Appellant admitted to using drugs unlawfully, to altering evidence and destroying his personal computer with the intent to obstruct justice, and that he knew his conduct was wrong. Moreover, as evidenced by a conversation between trial defense counsel and Appellant while Appellant was in inpatient treatment, Appellant was able to understand the nature of judicial proceedings against him and cooperate intelligently in his defense. Appellant relayed to trial defense counsel his experiences during treatment and the circumstances

of a separate civil proceeding in a manner which was consistent with earlier conversations that trial defense counsel had with Appellant's civilian attorney, chain of command, and the local base legal office.[8]

Trial defense counsel also believed that requesting a sanity board would not be in Appellant's best interest because it would provide the Government time to pursue additional charges. During this time, trial defense counsel learned of additional uncharged misconduct that Appellant had reported to staff members of the local Air Force Alcohol and Drug Abuse Prevention and Treatment (ADAPT) program. The Government appeared to be unaware of this evidence, as Appellant was only charged with unlawful use of two drugs—fentanyl and methamphetamine—at that time. Thus, trial defense counsel made a strategic decision not to pursue a sanity board in an effort to avoid providing the Government additional time to discover, investigate, and potentially add charges of further drug use.

In order to establish ineffective assistance of counsel, Appellant must demonstrate each of the three *Gooch* prongs. Because the first prong—a reasonable explanation for trial defense counsel's actions in not pursuing a sanity board—was met, it is not necessary to go through the remaining prongs. On this contention, the presumption of trial defense counsels' competence has not been overcome.

### b. Evidence for Plea Negotiations and Mitigation

Appellant alleges that trial defense counsel failed to adequately investigate and use his combat-related injuries and mental health issues as leverage for negotiating a plea agreement or as mitigating matters. The record does not support this contention.

As described in their declarations, trial defense counsel reviewed over 1,000 pages of Appellant's medical records, spanning from 2011 to 2021, which they used to develop their case theory—that Appellant's combat injuries led him to self-medicate with controlled substances. They also used information from Appellant's medical records during negotiations with the convening authority which ultimately led to a favorable plea agreement, significantly reducing Appellant's criminal exposure with respect to confinement for the charged

---

[8] During the civil proceeding, that judge allowed Appellant to sign an agreement for an alternate resolution. Appellant's civilian attorney assured trial defense counsel that the court would not have allowed Appellant to do so without believing he was mentally competent. Trial defense counsel stated that this was evidence of a judicial body finding Appellant mentally fit for a civil proceeding and strengthened their own assessment of Appellant's mental competency and their determination not to seek a sanity board.

offenses. Trial defense counsel stated: "19 AF was not eager to accept our [plea] offer even with the information we disclosed about [Appellant's] combat injuries, but ultimately accepted it after we presented a forceful written argument that leaned on [Appellant's] combat service and injuries."

At trial, Appellant's 13-page unsworn statement and his verbal unsworn statement were presented to the court. In his unsworn statements, Appellant spoke of his deployments, combat-related injuries, suicidal ideations, and traumatic brain injury diagnosis.

While trial defense counsel chose not to admit Appellant's medical records as evidence during trial or pre-sentencing proceedings, they had a strategic purpose for that decision. Upon review of available records, they discovered inconsistencies in Appellant's medical records, Appellant's application for a Purple Heart medal, and official combat reports documenting a firefight in November 2006. Discussions with Appellant regarding these inconsistencies did not allay trial defense counsel's concerns about the discrepancies. Instead of providing the actual records—which would have given the Government an opportunity to highlight these inconsistencies to the convening authority, the factfinder, and the sentencing authority—trial defense counsel chose instead to rely on information contained within them to negotiate a plea agreement, assist Appellant in drafting his unsworn statement, and develop the Defense's theory and sentencing argument. As trial defense counsel opined,

> In light of [Appellant's] already well-documented attempt to avoid criminal liability for wrongdoing (as reflected in Charges V and VI), [the convening authority] could have seized on those contradictions as a basis for withdrawing from the plea agreement and proceeding to trial, which would open [Appellant] up to the likely sentence of a punitive discharge and significant confinement time . . . .

Moreover, trial defense counsel "believed that an experience in late 2006 was too far attenuated from drug use in 2020 and the attendant cover-up [ ] to rely on that to avoid a punitive discharge or confinement at a fully litigated trial."

For reasons that will be further discussed below, there is no support for Appellant's position that he would have received a more favorable sentence if such issues were presented to the military judge in greater detail. As with our conclusion to Appellant's first claim of ineffective assistance of counsel, *supra*, there was a reasonable explanation for trial defense counsel's actions regarding Appellant's second claim and therefore the presumption of competence has not been overcome.

### c. Plea Agreement Requiring Dishonorable Discharge

Appellant claims that had his "[trial] defense counsel taken the information [he] had provided [them] seriously, and presented it to the convening authority, [trial defense counsel] could have negotiated a more favorable plea agreement that didn't result in a dishonorable discharge and cost [Appellant his] retirement." As discussed *supra*, counsel did inform the convening authority of Appellant's combat-related injuries when they were negotiating a favorable plea agreement. Moreover, trial defense counsel's declarations and the record of trial indicate that after Appellant served time in pretrial confinement, he was motivated to accept a mandatory dishonorable discharge as a term of his plea agreement in order to avoid any additional confinement. Specifically, before Appellant was in pretrial confinement, he wanted to avoid a punitive discharge. In their declarations, trial defense counsel explained:

> After his brief stay in pretrial confinement, [Appellant's] priorities changed. After that experience, he ardently wanted to avoid further confinement. He was willing to accept "anything but jail" because he wanted to see his children and his family, and he wanted to go home. In light of [Appellant's] new priority, Capt [S] and I had lengthy discussions between ourselves about how we might overcome [the convening authority's] position and achieve [Appellant's] goal.
>
> . . . .
>
> Since [Appellant's] highest priority was to avoid any confinement time, and our best professional judgment was that he likely would receive some form of punitive discharge and confinement if we fully litigated (based on the strength of the evidence and the facts of Charges IV, V, and VI), a plea agreement that prevented him from receiving additional confinement time was the only reasonable path to achieve [Appellant's] goal. Given 19 AF's stated desire for a mandatory bad conduct discharge and eighteen to twenty-four months of confinement, the only realistic offer we could make was for a mandatory dishonorable discharge.
>
> . . . .
>
> In short, it was likely that [Appellant] would be sentenced to a punitive discharge and some amount of confinement based only on the charges he ultimately pled guilty to. Had we litigated all of the charges and he was convicted of additional offenses, that became even more likely, and increased the odds of a dishonorable discharge. Furthermore, a plea agreement reduced the Government's incentives for investigating and charging additional

> drug use offenses, which would have increased [Appellant's] punitive exposure. Given [Appellant's] ardent desire to avoid further confinement and 19 AF's refusal to accept any plea deal that didn't include a mandatory punitive discharge, this appeared to be our best option for achieving [Appellant's] goal of avoiding further confinement. In our strategic assessment, litigating may have secured a bad conduct discharge, but it likely would have come with a significant period of confinement, which our client did not want.

Appellant does not dispute this, and we see nothing in the record to the contrary. This resulted in the plea agreement with mandatory dishonorable discharge, which Appellant understood and accepted.

For the reasons discussed above, we do not agree with Appellant that his issues were not sufficiently presented to the convening authority to negotiate a plea agreement or at trial as evidence in mitigation. The record of trial, Appellant's unsworn statements, and trial defense counsel's declarations indicate that these issues were not only presented at trial but formed the basis of the defense theory and were sufficiently researched, analyzed, and discussed in preparation for trial. The sentence adjudged and the record indicate that the issues were presented, and the convening authority and military judge considered the issues when making their decisions.

**B. Severity of Appellant's Sentence**

**1. Law**

We review issues of sentence appropriateness de novo. *See United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). Our authority to review a case for sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to, considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

### 2. Analysis

Appellant's criminal exposure for his convictions included, *inter alia*, a dishonorable discharge, confinement for 30 years, forfeiture of all pay and allowances, and reduction to E-1. Appellant's plea agreement limited his exposure to confinement to time already served—six days. The Government argued that in addition to the dishonorable discharge, which was mandatory pursuant to Appellant's plea agreement, that an appropriate sentence included total forfeiture of pay and allowances and reduction to E-1. Trial defense counsel argued Appellant took responsibility for his conduct and agreed—via his plea agreement—to the "harshest punishment" that could be adjudged by a court-martial, a dishonorable discharge. Therefore, trial defense counsel argued no additional punishment was necessary. The military judge sentenced Appellant to be dishonorably discharged, confined for a total of six days, and reduced to E-1.

Appellant argues the sentence imposed by the military judge is inappropriately severe because "a dishonorable discharge is unduly severe when considered in light of the nature and seriousness of the offense, his personal characteristics, and his record of service." We do not agree.

The circumstances surrounding Appellant's drug use have mitigating value. However, that value is tempered by the egregious circumstances of Appellant obstructing or attempting to obstruct justice in the manner he did. Appellant embroiled both his mother and his trial defense counsel in his scheme to alter his medical records. He conscripted his mother to deliver those records to his unsuspecting trial defense counsel for the purpose of manipulating the outcome of his pending court-martial. Simply put, Appellant showed no respect for the legal process and equally important, a flagrant disregard for the legal risk he saddled those who were attempting to assist him through such process.

Appellant argues the dishonorable discharge, which he himself bargained for,[9] is unduly severe. We would be remiss not to mention that he asked for this plea agreement term in lieu of confinement—confinement that could have reached 30 years. We concur Appellant's service record and injuries are remarkable and mitigating. However, in light of his well-thought-out plans to obstruct and attempt to obstruct justice—to include crushing his laptop, pouring acid over it and then covering it in glue—his bargaining via a plea agreement, which secured no additional confinement, was a reasonably prudent litigation strategy, and we will not disrupt it.

---

[9] The military judge ascertained that the Defense initiated this term of the plea agreement.

We have considered the nature and seriousness of the offenses and have given individualized consideration to Appellant, including his record of service, and all matters contained in the record. We conclude that the nature and seriousness of his convicted offenses support the approved sentence. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, Article 66(d), UCMJ, we conclude that the sentence is not inappropriately severe, and we affirm the sentence approved by the convening authority

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court